## Devinney *against* Reynolds.

The omission of the commissioners to bid for a tract of unseated land the whole amount of taxes and costs which may have been assessed upon it, will not avoid the title in the hands of a *bona fide* purchaser.

The recital in a treasurer's deed for unseated land, that a bond was *given for* the surplus purchase money, is *primâ facie* evidence of the fact, and sufficient for the purpose unless disproved.

It is not necessary to give a surplus bond when the amount of it would not exceed the cost of giving the bond. *De minimis non curat lex.*

An interlineation or erasure in the acknowledgment of a deed, is an objection to the proof of execution, but will not avoid the deed itself.

It is not necessary to the proper execution of a deed by an attorney-in-fact that he should sign his name to it; the name of the principal alone is sufficient.

A special power must be strictly pursued; hence, if an attorney be authorized to convey a tract of land, after he shall have redeemed it from a sale by the treasurer as unseated, and he conveys without redemption, the power is not well executed, and the purchaser takes no title.

A tract of unseated land may be sold by the treasurer for the non-payment of taxes, upon an assessment made by the commissioners, without the intervention of the assessor.

ERROR to the Common Pleas of *Juniata* county.

Levi Reynolds against James Devinney. This was an action of ejectment for three hundred acres of land.

The plaintiff gave in evidence a warrant to John Housel, dated 21st of January 1794, and a survey made and returned thereon 16th of May 1794; and then offered a book containing a list of unseated land in Mifflin county, for the years 1814, '15 and '16.

D. R. Reynolds sworn. This book is the original record of assessment in Mifflin county: the original rough assessments are not in the office. I examined the office with the clerk, and they could not be found; that is the only record of assessments in the office for those years: I got the book out of the commissioners' office: it is an office book.

Objected to. That it is not the original, and not proved to be a copy.

No such book is authorized by law to be kept in the commissioners' office.

The court overruled the objection, and sealed a bill of exception.

The book was then given in evidence, showing an assessment by the commissioners valuing the land at $150: tax for the years 1814, '15 and '16, 99 cents. The plaintiff then gave in evidence the treasurer's sale book, showing a sale of the land to Michael Hollman, and a deed to him, which recited a consideration less than the amount of taxes and costs due upon the land. The evi-

dence was objected to on that ground, but the court overruled the objection, and sealed a bill of exception.

The plaintiff then offered in evidence the following power of attorney:

"Know all men by these presents, that I, Michael Hollman, of Washington county, and state of Maryland, do by these presents constitute and appoint William M'Allister my legal attorney, and authorize him to redeem a tract of land in Fermanagh township, surveyed in the name of John Housel, lying and being in Juniata county, state of Pennsylvania, which has been sold as unseated land in said county and state, and purchased by a certain James Devinney, and do further authorize and empower him, after redeeming said land, to sell, dispose of, or otherwise use said land as to him may seem meet and proper; and I do by these presents bind myself, my heirs and representatives, as fully and firmly as if it was done by myself.

"Witness my hand and seal this 22d day of August 1838,
　　　　　　　　　　"MICHAEL HOLLMAN.　[SEAL]."

"Bradford county ss.

*Pennsylvania.*—On the day of the date of the foregoing power of attorney, the within Michael Hollman came personally before me, the subscriber, one of the justices of the peace in and for said county, and acknowledged the foregoing power of attorney or instrument to be his act and deed. Witness my hand and seal, the day and year above written.
　　　　　　　　　　"DAVID ROWLAND.　[SEAL]."

The defendant objected to this:

1. It is not proved under the provisions of the Act of Assembly.

2. The word *Pennsylvania* was interlined by some one since the acknowledgment was made.

The court overruled the objections, and sealed a bill of exception.

The plaintiff then offered in evidence the following deed, which was written upon the back of the treasurer's deed to Hollman:—

"To all to whom these presents shall come: Know ye that Michael Hollman, by William M'Allister his lawful and regularly deputed attorney-in-fact, for and in consideration of fifty dollars to him in hand paid at and before the delivery of these presents by Levi Reynolds, has granted, bargained and sold, transferred, signed and set over unto the said Levi Reynolds and to his heirs and assigns, all the within mentioned and described tract of land with the appurtenances, to have and to hold, unto the said Levi Reynolds for ever: as also this deed poll. In witness whereof,

[Devinney v. Reynolds.]

the said Michael Hollman, by his attorney aforesaid, hath hereunto set his hand and seal, this 6th day of December, A. D. 1838.

" MICHAEL HOLLMAN.   [SEAL].

" In presence of     }
   " EDM. S. DOTY." }

*Juniata County, ss.*

Before the subscriber, a Justice of the peace in and for said county, personally came William M'Allister, attorney as aforesaid, and acknowledged the foregoing deed poll as the act and deed of the said Michael Hollman, to the end that the same may be recorded according to law.   In witness whereof, I have hereunto set my hand and seal, this 6th day of December 1838.

JACOB MYERS.   [SEAL].

The defendant objected to the evidence offered, because :—

1. The power of attorney does not authorize the execution of the deed.

2. It is signed by Michael Hollman, and not by his attorney.

3. The deed is acknowledged by M'Allister, the attorney.

4. The proof of the power of attorney is not sufficient to justify the admission of the deed.

The court overruled the objections, and sealed a bill of exception.

The defendant, for the purpose of establishing a subsequent sale for taxes, of the land which is vested in him, offered in evidence a book from the commissioners' office, and called witnesses to authenticate it.

Robert Barnard sworn.   I am treasurer of Juniata county. This is the book in which the assessments of the unseated lands are entered.   I don't know anything about the small assessments. This book was made out by the commissioners, and handed to me, to sell the land described in it.

Jacob A. Christy sworn.   This is the only book in which the taxes were charged against the John Housel survey, (the book referred to by Robert Barnard, the treasurer).   All the unseated lands that were sold for taxes were charged in this book.   Don't know of any other unseated lands but what are charged in this book.   This book (with paper cover) is the transcript of the assessment of land, seated and unseated, for the year 1835, of Fermanagh township; these taxes in treasurer's book were charged by the commissioners; I done it by their direction; was their clerk; there is no other book in which the taxes are charged; there are no other books in the commissioners' office, showing a regular assessment of the unseated lands in Fermanagh township, than these two—the one with the paper cover and the treasurer's book; this is the original triennial assessment for this (Fermanagh) township for 1835, '6, and '7; this is the book with the paper cover, not the one offered as treasurer's book.

[Devinney v. Reynolds.]

Witness again. This is the return of the deputy surveyor of unseated lands in this county, made in the spring of 1838, before the sale, and I made out the treasurer's list from it. Don't know how long before the sale this return was made; it has no date to it.

The plaintiff objected to the evidence, on the ground that the assessment was not such as would justify a sale of the land for the non-payment of the taxes.

The court sustained the objection, and sealed a bill of exception.

The defendant then offered in evidence the sale by the treasurer in 1838, and his deed to James Devinney.

The plaintiff objected, and the evidence was rejected.

The defendant's counsel submitted a number of points to the court, for their direction to the jury; but they involved the same questions as those raised by the bills of exception.

*Mathers* and *Watts,* for plaintiffs in error.
*Parker,* for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—This is an action of ejectment, to recover 300 acres of land in Fermanagh township, warranted in the name of John Housel. The plaintiff claims title to the tract in controversy, under a sale by the treasurer of Mifflin county to Michael Hollman for the taxes of the years 1814, 1815, 1816, and a deed by his attorney-in-fact to him.

The court was right in admitting the book containing the list of unseated lands, as contained in the first bill of exceptions, because it is proved to be the original record of the assessment.

The other errors may be embraced in the exceptions taken to the charge.

It is said, that if the land was not bid to a sum sufficient to pay the taxes and costs, the deed is void. It is enacted, in the 5th section of the Act of the 13th of March 1815, that if any tract of unseated land, sold for taxes, shall not have bidden for it a sum equal to the whole amount of taxes for which it shall have been advertised, and the costs, it shall be the duty of the commissioners, &c., to bid off the same, and a deed shall thereupon be made by the treasurer to the commissioners for the time being, and to their successors in office, for the use of the county. No decision has been made, of which we are aware, which goes the length of ruling that the neglect or refusal of the commissioners to perform this duty, will avoid the title in the hands of a *bona fide* purchaser. The commissioners and treasurer are public officers, and it would seem unjust to compel the purchaser to examine a fact peculiarly within their knowledge, and to visit him with the consequences of a mistake, which may arise from a miscalculation by them of the amount of the taxes and costs. But be this as it

may, we see no force in the objection, since the supplement to the Act of the 13th of March 1817, which makes it discretionary with the commissioners of the respective counties what lands they will purchase for the use of the county.   The supplement (first section) would seem to have been intended to remedy the inconveniences which arose, and which were soon felt, from *compelling* the commissioners, without any discretion, to purchase the lands in a given event.   Cases will frequently arise, where it is much better that the land should go into the hands of individuals who will cultivate and improve it; and when, in truth, its intrinsic value is not equal to the burthens imposed upon it.   The legislature have, therefore, wisely left a discretion in the commissioners, who it is presumed will discharge their duty in attending to the interest of the county.

The recital in the deed is *primâ facie* evidence that the bond was filed as then stated, and it was not necessary to show that fact by any other testimony, as long as it remained unrebutted by any testimony on the part of the defendant.   We may also apply the principle, *de minimis non curat lex*, for it seems the surplus was only one cent.   Besides, it has been decided that where the cost of the bond would exceed the surplus, it is not necessary to file it.

But it is contended there has been an interlineation by the insertion of the word " Pennsylvania" in the acknowledgment, which it is said is in a different ink.   But this, to make the most of it, goes to the proof of the execution and cannot avoid the deed itself.   But, in truth, there is neither interlineation nor erasure; and as to the allegation (admitting its truth) that it is in a different ink, it is so common as to be an immaterial circumstance.

But did the letter of attorney authorize the execution of the deed, without proof that the attorney had redeemed the land? and if so, was the deed defectively executed?   These points arise in the charge.   It is convenient to consider the second point first. The execution of the deed is in proper form, and, indeed, we seldom see such instruments executed so much in accordance with approved precedents.   The deed commences, " To all to whom these presents shall come, know ye that Michael Hollman, by William M'Allister, his lawful and regularly deputed attorney-in-fact, &c. grants," &c.   And concludes, " In witness whereof, the said Michael Hollman, by his attorney aforesaid, hath hereunto set his hand and seal, this sixth day of December 1838."   To this are appended the name and seal of Michael Hollman.   It would be useless to add the name and seal of the attorney, for it is what it purports to be, the deed of the principal and not the attorney, and therefore does not require his name or seal, but the name and seal of the principal only.

The letter of attorney, after reciting that the property had been sold as unseated land, authorizes and empowers the attor-

[Devinney v. Reynolds.]

ney, *after redeeming the land,* to sell, dispose of, or otherwise use said land, as to him may seem meet and proper.　An agent, constituted for a particular purpose and under a limited power, cannot bind his principal if he exceeds his power.　A special power must be strictly pursued : and whoever deals with an agent constituted for a special purpose, deals at his peril when the agent passes the precise limits of his power.　This was a special power, to be exercised in the event, and after he had redeemed the land. But this prerequisite he omits to prove, and consequently leaves himself open to the objection which has been made.　We at first doubted whether the defendant could take advantage of this defect ; but on reflection we are convinced he may.　He has an interest in it, as the purchaser of the land at the tax sale ; and as such, is entitled to the redemption money which the attorney is directed to pay.　On another trial, it will be open to the plaintiff to prove that the land was redeemed, or what is the same thing, that the plaintiff ratified the act of his agent.

The error in rejecting the book of the assessment offered in evidence by the defendant only remains.　The book was offered for the purpose of showing that the land had been assessed by the commissioners.　This was evidence, on the authority of *Hubley* v. *Keyser,* (2 *Penn. Rep.* 496.)　The assessors *value* the land, but the commissioners make the assessment ; from which it follows, that you cannot avoid a sale for taxes merely because you are unable to prove that the *assessor* has performed this ministerial duty.　It is enough, under the liberal construction given to the Act of 1815, that an assessment has been made by competent authority.　The treasurer proved that the book offered in evidence was the book in which the assessment of the unseated land was entered, that it was made out by the commissioners, and handed to him to sell the lands described in it.　It was also proved that it was the only book in which the taxes were charged against the Housel survey, and that all the unseated lands that were sold for taxes were charged in this book, and that the witness did not know of any other unseated land but that which is charged in this book. The witness says he was the clerk of the commissioners ; that the taxes in the treasurer's book were charged by the commissioners ; that he did it by their directions.　The court rejected the evidence, because another book with a paper cover was proved to be the transcript of the assessment of the land, seated and unseated, for the years 1835, '36 and '37, of the township, and that the tax of 1835 was not charged in it ; and that the book does not purport to be an assessment.　But does not the evidence tend to prove that an assessment was made that year, although an inference to the contrary may be drawn from the fact that there is no charge for that year in the book, which, it appears, was a transcript of the assessment for that county ?

Judgment reversed, and a *venire de novo* awarded.