# Hess *versus* Herrington.

1. Assessors did not value unseated land returned by them, and the commissioners assessed a tax at a valuation of $1 per acre, which was the uniform valuation of all unseated lands in the county. *Held,* that this was at most an irregularity which was cured by the Act of 1815.

2. Unseated land may be sold for taxes on an assessment without the intervention of the assessor.

3. The curative provisions of the Act of March 13th 1815, do not apply to a sale by commissioners of unseated land bought by them at treasurer's sale.

4. The act does not require that the book to be kept by the commissioners of lands bought by them at treasurer's sale, shall be a separate book without other entries.

5. A plaintiff in ejectment must show a prima facie title, whether his claim be by a tax sale or otherwise; or whether against an intruder or one setting up a right of possession.

6. Land surveyed as 111 acres was assessed in the warrantee name in three tracts, one of 60 acres and two 40 each; one 40 acre tract was sold for taxes and conveyed as a tract of 40 acres, giving township, &c., surveyed to J. Coleman; there was no evidence that the other two parts were seated or any evidence of distinct identification. *Held,* that there was no evidence of identity for the jury.

7. Coxe *v.* Blanden, 1 Watts 533, distinguished.

March 27th 1873. Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Lycoming county:* Of January Term 1872. No. 285.

This was an action of ejectment, brought August 6th 1869, by

James Herrington against Reuben Hess, "for 40 acres of land, part of a tract in the warrantee name of John Coleman." The writ was returned "summoned."

The case was tried November 1st 1871, before Gamble, P. J.

The plaintiff gave in evidence,—Warrant, March 25th 1794, to John Coleman, for 100 acres, and survey, March 31st 1797, for 111¾ acres and allowance.

The plaintiff, under objection and exception, gave in evidence the assessment books of Lycoming county, showing assessment of 60 acres in Clinton township, J. Coleman warrantee, no owner's name, valued at $60, with county, state, road and school taxes for 1858 and 1859; 40 acres, Clinton township, J. Coleman warrantee, no owner's name, valued at $40, same kind of taxes, and for same years; 40 acres, J. Coleman warrantee, Clinton township, no owner's name, valued at $40, same kind of taxes and for same years. The 60 acres was marked in pencil, "Seated, P. Berger." One of the 40-acre tracts was marked in pencil, "Seated, R. Hess." Also sale of unseated land for taxes, June 23d 1860, "40 acres, J. Coleman, Clinton township, sold to commissioners."

Also assessment of school directors of Clinton school district for 1859.

The clerk of the commissioners testified that the pencil-marks were not put there by the authority of the commissioners.

The plaintiff testified that they were not there for some time after January 26th 1869.

The plaintiff then gave in evidence the treasurer's deed to the commissioners, dated November 10th 1860, for the same tract sold at treasurer's sale; and deed of the commissioners to the plaintiff, dated February 17th 1869, for the same tract.

The clerk of the commissioners testified that the sales of the commissioners in 1869 were public sales to the highest bidder; he also gave evidence that the sales were advertised as required by the Act of Assembly.

The defendant gave in evidence the assessment books of Clinton township, for the purpose of showing that this land was not returned by the assessors for the years 1856, 1857, 1858, and that tract was assessed on the seated list in 1859.

The clerk of the commissioners testified that there were no other assessments in the commissioners' office for 1856, 1857, 1858 and 1859 than those in evidence:—

"There is no book kept in the commissioners' office wherein is entered the name of the person, as whose estate the land so purchased by the commissioners has been sold, the quantity of land, the amount of tax sold for, so long as the land remained unredeemed, and for five years next following such sale to them. The commissioners have not charged the taxes assessed upon

[Hess *v.* Herrington.]

said land, as required by the Act of March 13th 1815. No such book kept. The commissioners' assessment book, already in evidence, is the book in which the unseated lands are assessed, for both the treasurer's sales and the commissioners' sales, and are charged up by the commissioners every two years. This assessment book is kept the same after a sale to the commissioners as before—the assessments are continued against the lands after the sale just as before—and there is no book keeping such account other than this. After a sale to the commissioners it is noted in this book, after the warrantee name, by the word 'Commissioners.' That entry denotes that the tract thus marked is sold to the commissioners. When application is made for the redemption of such lands, the taxes, &c., are made up from this book. The amount necessary to effect a redemption is ascertained from this book. These assessments are made upon the uniform valuation of unseated lands in the county, at $1 per acre."

The defendant requested the court to charge :—

1. That there is no such assessment as will support the treasurer's sale to the commissioners.

2. That the prerequisites to the treasurer's sale have not been complied with, and that the sale by the treasurer was unauthorized and void.

3. That the prerequisites to the sale by the commissioners to the plaintiff have not been complied with, and that the sale by them to the plaintiff was unauthorized and void.

4. There being evidence that the tract of land in warrantee name of J. Coleman has been severed, and no evidence to identify the land claimed by the plaintiff as that sold by the commissioners to the plaintiff and claimed by him in this suit, the plaintiff cannot recover.

5. That if the jury believe the evidence, the plaintiff cannot recover.

The court declined to answer the five points as requested by the defendant, and submitted the cause to the jury upon the charge.

Judge Gamble, after stating the evidence of the plaintiff, said :—

* * * "Is this evidence of a legal assessment of these several parcels of land? The commissioners are the officers authorized by law to fix the rate of taxation and assess the same upon the taxable property of the county. The assessors of the several townships are required by law to furnish a list of such taxable property with a valuation annexed to the same, to enable the commissioners to equalize taxation and make it general. This is a part of the system of taxation, and includes the unseated lands as well as the other taxable property of the respective townships. But it is not the only mode by which the county commissioners may obtain a list of the unseated lands for the purpose of taxation. They may

[Hess *v.* Harrington.]

require the deputy or district surveyor to return such a list, and may assess them with their proper proportion of the public taxes, according to their own discretion and judgment. In this county, it is in evidence by the clerk for the commissioners, that the uniform valuation of unseated lands for the purposes of taxation is one dollar per acre.

["It does not appear to the court, therefore, to be essential to the validity of an assessment of taxes upon unseated land, that they should be returned by the assessors to the county commissioners, for the years for which they are assessed. The essential and material facts, upon which the validity of the assessment depend, are whether they are properly taxable, and whether a tax, authorized by law, has been assessed upon them by the commissioners. The return of the assessor without a valuation, or his omission to return them at all, should not exempt them from taxation, and cannot, in our judgment, render invalid a lawful tax assessed upon them by the commissioners. It is, at most, a mere irregularity which falls within the curative provisions of the Act of 1815. We say to you, therefore, that if you are satisfied from this book, that these taxes were actually assessed on these several pieces of land, by the county commissioners, and by the school directors of the Clinton school district, for the years 1858 and 1859, or either of them, and that they remained unpaid for one year, the sale by the treasurer was legal and valid, if the land sold was in fact unseated.] It was assessed and sold as unseated, there is no evidence in the cause to the contrary, excepting the pencil marks found on the commissioners' assessment book, and the circumstance that 40 acres in the same warrantee name, and probably a part of the same tract, are assessed to the defendant, as seated land for the year 1859. If you should be satisfied that these 40 acres are the same part of the survey, sold to the plaintiff, it could have little or no bearing upon the question of whether it was unseated in 1858. As to the pencil marks it is not known when, nor by whom they were made, and the plaintiff swears that they were not there for some weeks after the commissioners' deed was made to him, which would be more than eight years after the treasurer's sale. If this tract of land were in fact seated either by residence or cultivation in 1858, when taxed as unseated, it must have been known in the neighborhood, and was therefore susceptible of positive proof, none such having been produced, the inference is very strong that no such fact existed and there is therefore but little importance to be attached to these pencil entries.

["If you are satisfied from the evidence that these taxes were assessed by the county commissioners, that the land was unseated, and that one or more of the taxes assessed remained unpaid for one year, then the land was subject to sale, and the treasurer's

[Hess *v.* Harrington.]

deed vested the title in the county commissioners, in trust for the county.]

["We will next consider the regularity of the sale by the commissioners; and as the curative provisions of the Act of 1815, are applicable only to sales by the treasurer, a substantial compliance with all the prerequisites of a sale by the commissioners must be shown. The Act of 1815 requires the commissioners to hold the title for a period of five years, unless sooner redeemed by the original owner; and to provide a book wherein shall be entered the name of the person as whose estate the land was sold, the amount of taxes for which it was sold, and the amount of taxes charged against it for each succeeding year whilst the title remains in the county; and at the expiration of five years, to sell the land at public sale, provided the full amount of these charges, interest and costs were bid. The Act of 1824 modified this regulation, by requiring the land to be advertised in all the newspapers published in the county, at least thirty days preceding the sale, and then authorizing a sale for the best price that can be obtained for the same. This is still further modified by a special act relating to such sales of lands in this county, approved the 6th of March 1868, by which the advertisement is limited to two or more newspapers having the largest circulation in the county."] * * *

The judge then stated the evidence of the clerk as to the manner of keeping the commissioners' books, the advertisements, sale, &c., and proceeded:

"The evidence is for you, and if you are satisfied from all the evidence in the cause that there was thirty days notice of the sale, published in two of the newspapers having the largest circulation in the county, that the sale was public, and to the highest bidder, and that an account of the taxes for which the land was sold, and those afterward assessed against it were charged to the tract designated by the warrantee name in the commissioners' assessment book, then we think the prerequisites of a sale have been substantially complied with.

"Although the provisions of the Act of 1815, requiring this account to be kept in a book provided for the purpose is not repealed by the Act of 1824, yet it is manifest that at least one of the reasons for it is removed by repealing the restriction of the sale, unless a sum equal to these charges were bidden, and authorizing a sale for whatever sum might be bidden without regard to these charges. And perhaps the only remaining reason for keeping such an account at all, was to enable the original owner to redeem his land by paying these charges, with interest, within five years. The original owner did not offer to redeem within that period, nor does it appear that he is here now to complain. Nevertheless we think the account, if kept, as testified to

by the clerk of the commissioners, was substantially as required by law.

["The only remaining point to which we will call your attention, is the question of identity. Are the forty acres of land sold by the commissioners to the plaintiff part of the warrant and survey in the name of John Coleman, given in evidence, and the same described in the plaintiff's writ? This is a question of fact for you to determine from the evidence.] Unseated lands are generally identified and distinguished by the warrant. The owner is often unknown even in the vicinity where land lies. * * *

"An assessment of three pieces of land in the warrantee name of J. Coleman, in Clinton township; one containing sixty acres and two containing forty acres each. A deed from the treasurer to the commissioners, and from the commissioners to the plaintiff for forty acres, part of J. Coleman, situate in Clinton township. There is no other evidence of any division of this survey, nor is there any evidence of any other survey in the same name in Clinton township.

. ["Under this title the plaintiff seeks to recover the possession. of forty acres of land, part of the survey in the name of John Coleman, situate in Clinton township, and described by particular boundaries. The defendant, by his appearance and plea, admits that he is in possession of the land described in the writ. He has not shown any title in himself, nor that this land was seated, or the taxes paid, and therefore, not subject to sale. Under such circumstances, we think, the plaintiff would be entitled to recover the possession of any forty acres, part of John Coleman, in Clinton township, which was unseated, and upon which the taxes were unpaid for either of the years for which it was sold.]

"But the question of the identity of the land described, in the plaintiff's writ, with that assessed, sold and conveyed to the plaintiff, we leave, as a fact for you to determine from the evidence in the cause." * * *

The verdict was for the plaintiff.

The defendant took out a writ of error.

He assigned twelve errors:—

1, 2, were as to the rulings on the admission of evidence.

3–7. Declining to answer the defendant's points.

8–12. The parts of the charge in brackets.

*S. Lynn* (with whom were *J. J. Metzgar* and *W. H. Armstrong*), for plaintiff in error.—The authority given to the assessor to place a valuation on lands cannot be usurped by the commissioners, save in the excepted cases provided by statute: Bratton *v.* Mitchell, 1 W. & S. 310; Hubley *v.* Keyser, 2 Penna. Rep. 501; Laird *v.* Hiester, 12 Harris 463; McCall *v.* Lorimer, 4 Watts 355. The presumption of regularity may be rebutted: Morton *v.*

[Hess *v.* Harrington.]

Harris, 9 Watts 324.    They cited also Heft *v.* Gephart, 15 P. F. Smith 510; Wheeler *v.* Winn, 3 Id. 131; Troutman *v.* May, 9 Casey 455.

The curative provisions of the Act of 1815 do not apply to a sale by commissioners after a purchase by them at treasurer's sale: Jenks *v.* Wright, 11 P. F. Smith 410.

The plaintiff had not the right to elect, and the burden of proof is upon him to show that he bought the land for which he has brought suit.    Evidence of identification must be given for the purpose of rendering the assessment valid, and of showing the territory covered by the sale: Philadelphia *v.* Miller, 13 Wright 440; Lyman *v.* Philadelphia, 6 P. F. Smith 499; Russel *v.* Werntz, 12 Harris 337. The plaintiff must recover on the strength of his own title, and the burden is on him to show the identity of the land claimed in the writ with that conveyed by the treasurer's deed: Hoffman *v.* Danner, 2 Harris 28; Scott *v.* Sheakly, 3 Watts 50; Hyskill *v.* Givin, 7 S. & R. 369; Spang *v.* Schneider, 10 Barr 193; Buchanan v. Moore, 10 S. & R. 280; 1 Greenleaf on Ev., sect. 74; Fisk *v.* Fisk, 12 Cush. 150; St. Clair *v.* Shale, 8 Harris 105; Miller *v.* Smith, 9 Casey 391.

*J. M. Gamble* and *R. P. Allen,* for defendant in error.—There is nothing to which the maxim, *omnia præsumuntur rite esse acta,* applies with so much force as a tax title: Heft *v.* Gephart, 15 P. F. Smith 510. The assessment is good whether or not it be shown that the assessors returned the valuation: Hubley *v.* Keyser, 2 Penna. R. 501; Devinney *v.* Reynolds, 1 W. & S. 333; Crum *v.* Burke, 1 Casey 377.

Identity is a question for the jury: Woodside *v.* Wilson, 8 Casey 54; Stewart *v.* Shoenfelt, 13 S. & R. 360; Strauch *v.* Shoemaker, 1 W. & S. 174; Burns *v.* Lyon, 4 Watts 363; Thompson *v.* Fisher, 6 W. & S. 520; Dunden *v.* Snodgrass, 6 Harris 151; Russel *v.* Werntz, 12 Id. 337; Miller *v.* Hale, 2 Casey 436.

All that is requisite for a plaintiff in ejectment, in the first instance, after showing title out of the Commonwealth, where the land is sold for taxes, is to exhibit the deed from the commissioner or treasurer.    This is such a primâ facie title as is sufficient to put the defendant on proof of a better title: Foster *v.* McDivit, 9 Watts 344; Shearer *v.* Woodburn, 10 Barr 511; Dikeman *v.* Parrish, 6 Id. 210; Troutman *v.* May, 9 Casey 455; Foust *v.* Ross, 1 W. & S. 501; Wheeler *v.* Winn, 3 P. F. Smith 122.

The opinion of the court was delivered, May 17th 1873, by

SHARSWOOD, J.—The twelve assignments of error may be disposed of by the consideration of three questions.

The first relates to the assessment of the tax upon which the land

[Hess *v.* Harrington.]

alleged to be that described in the writ, was sold by the treasurer to the county commissioners and conveyed by deed dated November 10th 1860. The plaintiff in error contends that valuation is essential to an assessment; and that the only officers competent by law to make a valuation are the assessors. It appearing that the tract in question was not returned by the assessors for the year, for the taxes for which it was sold, the commissioners, it is said, had no right to put a valuation upon it, and that, as a consequence, there was in law no assessment, and the sale by the treasurer was invalid. It seems that there is a usage of long standing in Lycoming county, to put a uniform valuation of one dollar per acre upon all unseated lands, in consequence of which the assessors have fallen into the practice of making no return of valuation in such cases. It is certainly *malus usus et abolendus.* How the assessors can reconcile it with the terms of their official oaths, it is not easy to comprehend. But because they have failed in the performance of their duties, it does not follow that the land was not subject to taxation, and the title of the commissioners, by the treasurer's sale, a perfectly good one. The learned judge below instructed the jury that "the return of the assessor without a valuation, or his omission to return them at all, should not exempt the lands from taxation, and cannot, in our judgment, render invalid a lawful tax assessed upon them by the commissioners. It is, at most, a mere irregularity, which falls within the curative provisions of the Act of 1815." In this instruction we think that he was entirely right.

There was evidence by a record from the office of the county commissioners that the taxes in question were assessed by them. The twenty-first section of the Act of April 12th 1842, Pamph. L. 266, enacts that "all records of the county commissioners charging lands as unseated with arrears of taxes, shall be evidence of an assessment." By the fourth section of the Act of March 13th 1815, 6 Smith 301, it is declared that "no alleged irregularity in the assessment, or in the process, or otherwise, shall be construed or taken to affect the title of the purchaser; but the same shall be declared to be good and legal." The Act of 1842 makes the record of the county commissioners evidence of an assessment in fact, and the Act of 1815, to support the title of the purchaser, cures all irregularities in it. The county commissioners were the officers competent to assess the tax. That no valuation was made or returned, was a mere irregularity. The county commissioners are the board of revision, with power to revise, correct and equalize the valuation of all property taxable by law: Act of July 27th 1842, Pamph. L. 445; Act of April 29th 1844, Pamph. L. 501. It would be no violent presumption if it were necessary to resort to it, that the valuation upon which the assessment was made, was settled by them in their capacity as a board

[Hess *v.* Harrington.]

of revision. But it is not necessary. In Hubley *v.* Keyser, 2 Penna. Rep. 502, Mr. Justice Huston, speaking of the Act of 1815, says: "The object was to make the sale and deed confer a title without proof of any one prerequisite, except that the land was unseated, and that a tax was charged by the commissioners, regularly or irregularly; that this tax was unpaid, and the land sold and not redeemed within two years." In that case, the objection to the sale was, that there was proof that the assessors had not valued or returned the land as unseated for assessment. It was argued there, as here, that the valuation by the commissioners was unauthorized, and the assessment a nullity; but it was held otherwise by the court. Indeed, in citing this case afterwards, in Fager *v.* Campbell, 5 Watts 288, Chief Justice Gibson said: "The tax-book was an official document, and according to Hubley *v.* Keyser, it was both competent and sufficient to show that the land had been assessed." Both these cases were prior to the Act of 1842. It was, indeed expressly decided in Devinney *v.* Reynolds, 1 W. & S. 328, that a tract of unseated land may be sold by the treasurer for the non-payment of taxes upon an assessment made by the commissioners, without the intervention of the assessors. "The assessors," said Mr. Justice Rogers, "*value* the lands, but the commissioners make the assessment; from which it follows that you cannot avoid a sale for taxes, merely because you are unable to prove that the *assessors* had performed this ministerial duty."

The second question is, as to the validity of the commissioners' sale. It has been decided that the curative provision of the Act of 1815, does not apply to these sales: Jenks *v.* Wright, 11 P. F. Smith 410. It is objected to the validity of the commissioners' sale in this case, that they did not follow the provisions of the fifth section of the Act of March 13th 1815, 6 Smith 301, which declares that "it shall be the duty of the commissioners to provide a book wherein shall be entered the name of the person as whose estate the same shall have been sold, the quantity of land, and the amount of taxes it was sold for, and every such tract of land, shall not thereafter, so long as the same shall remain the property of the county, be charged in the duplicate of the proper collector; but for five years next following such sale, if it shall so long remain unredeemed, the commissioners shall in separate columns in the same book, charge every such tract of land with reasonable county and road tax, according to the quality of the said land, not exceeding in any case the sum of six dollars for every hundred acres." Without stopping to inquire whether a failure on the part of the commissioners to observe these directions ought to invalidate the sale, as it forms no part of the process, but is a mere direction as to book-keeping, we are of opinion with the learned judge below, that "the account, if kept as testified by the clerk of the commissioners, was substantially as required by law." The clerk

[*Hess v. Harrington.*]

stated: "This assessment book is kept the same after a sale to the commissioners as before, the assessments are continued against the lands after the sale just as before, and there is no book for keeping such account other than this. After a sale to the commissioners, it is noted in this book after the warrantee's name, by the word 'commissioners,' that the tract thus marked, is sold to the commissioners." The act does not in terms require that the book shall be a separate book, containing no other entries. It is enough if there is a record of the entries, as required by the act, made in some book.

The remaining question is, whether the case was properly submitted to the jury as to the identity of the tract assessed and sold with that described in the writ of ejectment. The plaintiff in ejectment must show at least a primâ facie title—by prior possession or papers—in himself, for the land described in the writ, whether the claim be a tax sale or otherwise; whether against a mere intruder, or one setting up some right of possession. No man can be lawfully ejected from lands by less than this. In this case, on the assessment books of the commissioners of unseated lands, there were three separate tracts assessed in the warrantee name of J. Coleman: one of sixty, and two of forty acres each. One of these tracts of forty acres was that assessed and sold and conveyed in the treasurer's deed by the general and vague description, "a tract of land containing forty acres, situate in the township of Clinton, in the county of Lycoming, surveyed to J. Coleman." The title from the Commonwealth produced by the plaintiff, showed a warrant to John Coleman, for one hundred acres, and a return of survey for one hundred and eleven and three-quarter acres and allowance. We may assume that the three assessed tracts made up this survey, though they overrun it in quantity. How the whole tract came to be divided into three parcels did not appear. There were, indeed, some pencil marks on the assessment that two of the tracts were seated, by whom or when made was unknown, except that they were not there at the time of the commissioners' sale. They were therefore properly disregarded. Had there been evidence that the other two tracts were seated at the time of the sale, it would certainly have been sufficient to have identified the remaining one as the subject of the sale. There was no evidence whatever to show which of the two tracts was the one assessed and sold, nor of their relative position, nor any other fact which could possibly lead to identification. The learned judge then left the question of identity to the jury without evidence, which, we think, was an error. He accompanied it, however, with an instruction which throws light upon the ground upon which he made this submission. "Under such circumstances, we think the plaintiff would be entitled to recover the possession of any forty acres, part of John Coleman, in Clinton

[Hess *v.* Harrington.]

township, which was unseated, and upon which the taxes were unpaid for either of the years for which it was sold."

It is contended that this instruction of the learned judge may be sustained by the ruling of this court in Coxe *v.* Blanden, 1 Watts 533, in which it was held that a treasurer's sale for taxes of part of a tract, and a conveyance of that part designating the quantity but not the locality, is good; and an unrestricted choice of locality to the purchaser is a necessary incident of the sale and the consequence of a reasonable interpretation of. the statute. But in that case there was an assessment upon an entire tract of four hundred and thirty-seven acres, and a sale of three hundred and eighteen acres of it for a sum sufficient to pay the taxes and costs on the whole. It is clearly distinguishable from this case. There was no doubt there that the assessment upon which the sale was made, fastened upon every part of the tract, and a foundation for the sale of every part existed. But not so here, where the parts were severally assessed. The cases abundantly show that there must be evidence to identify the tract assessed with that sold and described in the writ: Russell *v.* Werntz, 12 Harris 337; City of Philadelphia *v.* Miller, 13 Wright 440; Lyman *v.* City of Philadelphia, 6 P. F. Smith 488; Glass *v.* Gilbert, 8 Ibid. 266; Brotherline *v.* Hammond, 19 Ibid. 128.

Judgment reversed, and *venire facias de novo* awarded.