## Van Pelt *v.* Spotz, Appellant.

*Principal and agent—Commissions—Authority of agent—Evidence —Judgment non obstante veredicto.*

In an action of assumpsit to recover commissions for securing a buyer of real estate, plaintiffs offered evidence that the negotiations were made through an alleged agent, the granddaughter of the defendant, who informed them that defendant would accept a certain amount for the property. When plaintiffs returned with an agreement of sale for that amount, executed by the purchaser, the granddaughter instructed them to submit it to the defendant's son-in-law for approval. The agreement was subsequently returned to plaintiffs and the sale declined.

Such evidence was insufficient to establish that the alleged agent had any instructions or authority to advise plaintiffs that the terms of the sale were satisfactory or that she had acted in any other capacity than that of messenger. In the absence of any proof of agency there was no contract with the defendant and a judgment in favor of plaintiffs will be reversed.

Agency cannot be proved by the alleged agent's declarations alone.

Argued October 11, 1927. Appeal No. 94, October T., 1927, by defendant from judgment of C. P. No. 2, Philadelphia County, June T., 1926, No. 651, in the case of David VanPelt and John VanPelt, trading as VanPelt and Company, v. Valeria M. Spotz. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

214        VAN PELT *v.* SPOTZ, Appellant.

Statement of Facts—Opinion of the Court.  [92 Pa. Superior Ct.
Assumpsit to recover commissions for securing a buyer for real estate.  Before LEWIS, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,430.80 and judgment thereon.  Defendant appealed.

*Error assigned* was refusal of motion for judgment non obstante veredicto.

*Ulysses S. Koons,* for appellant.—Agency cannot be proved by declarations of the alleged agent alone: Mahoning Valley Bread Company v. Baltimore & Ohio Railroad Company, 83 Pa. Superior Ct. 379; Hileman v. Falck, 263 Pa. 351; Lawall v. Groman, 180 Pa. 532; Bunting v. Goldstein, 283 Pa. 356.

*Thomas Ridgway,* for appellees.

OPINION BY LINN, J., December 15, 1927:

The plaintiffs, real estate brokers, have judgment on a verdict for commissions for obtaining a buyer of defendant's real estate.  She complains that her motion for judgment n. o. v. was refused.  She asserts that while plaintiffs were authorized to find a buyer on terms and conditions satisfactory to her, she did not approve the terms and conditions submitted.  The plaintiffs assert that she did approve and that her approval was communicated to them by her granddaughter, who, they say, was her agent for the purpose. Whether the evidence of authority of the granddaughter was sufficient, is the only point involved on this appeal.

The averments of the statement of claim and the evidence put in by the plaintiffs were to the effect that the agency was special and not general.  In Hoffman v. Marano, 71 Pa. Superior Ct. 26, 28, we said: " . ... . . . the authority of a special agent must be strictly pur-

sued. It has been stated that whoever deals with an
agent constituted for a special purpose deals at his
peril when the agent passes the precise limits of his
power: Devinney v. Reynolds, 1 W. & S. 328, 333. A
special agent is one who is employed to do one specific
act or certain specific acts only and does not bind his
employer unless his authority be strictly pursued.
Loudon Savings Fund Society v. Hagerstown Sav-
ings Bank, 36 Pa. 498-503." " 'Parties dealing with
an agent known by them to be acting under an express
grant, whether the authority conferred be general or
special, are bound to take notice of the nature and ex-
tent of the authority conferred. They must be regard-
ed as dealing with that grant before them, and are
bound at their peril to notice the limitations thereto
prescribed either by its own terms or by construction
of law:' Mecham on Agency (2d ed.), section 707:"
Deliman v. Greek Catholic Union, 275 Pa. 571, 574.

Agency cannot be proved by evidence of the alleged
agent's declarations alone (Mahoning V. B. Co. v. R.
R. Co., 83 Pa. Super. Ct. 379, 382) and if nothing more
appears, the case should be withdrawn from the jury:
Central Pa. Telephone Co. v. Thompson, 112 Pa. 118,
132. When plaintiffs closed their case they had shown
no authority in the granddaughter to deal with the
terms of sale in accordance with their contentions and
no ratification by the defendant; defendant's motion
for a non-suit could therefore have been granted with
propriety. As the motion was refused, we inquire
whether the evidence offered by defendant supplied
what was lacking in plaintiffs' case; we all agree that
it did not. The following extracts from the evidence
of plaintiffs (and they follow the averments of the
statement) show that they dealt with the granddaugh-
ter on the understanding that she was nothing more in
the transaction than a means of transmitting messages
between them and the defendant. "Q. And she
[granddaughter] would inform you that she would re-

port it to Mrs. Spotz [defendant]? A. Yes, she did. Q. And shortly afterward she told you what Mrs. Spotz had said? A. Yes......." Q. What did you do then? A. On Saturday morning I went to 1925 Spruce Street, and saw Mrs. Wescoat [the granddaughter], and presented her with a letter in which I made an offer of $50,000 cash for the house...... Q. What did Mrs. Wescoat say to that? A. Mrs. Wescoat said that she would submit that offer to her grandmother, Mrs. Spotz, and at the time we discussed the time of settlement, that is, when they wanted to give up the house....... Q. How did that interview end on that day? A. It ended by Mrs. Wescoat saying that this offer would be considered, then she would advise us on Monday what they would do about it..... Q. When did you hear from Mrs. Wescoat after that? A. I heard from Mrs. Wescoat on Monday morning. Q. What did she say to you then? A. She said that her grandmother had decided not to accept the $50,000 for the house." Plaintiffs then got an offer of $55,000 which they communicated to the granddaughter. "Q. What did she say when you told her that? A. Well, now, that was early Wednesday morning, and Mrs. Wescoat said she would tell her grandmother that we had this offer from Mr. Bell for $55,000 cash, and that she would let me know a little later on in the day what her grandmother would do about it......Q. Mrs. Spotz herself never put any price on the house to you, did she? A. Not personally. Q. And practically all that happened was this, that you called up Mrs. Spotz's home and got in touch with Mrs. Wescoat, and told her these offers had been made and you requested her to make known those offers to Mrs. Spotz; is not that correct? A. That is correct. Q. And Mrs. Spotz never answered any of these communications or any information you gave over the telephone to Mrs. Wescoat; she never answered them? A. No, Mrs. Spotz never came to the telephone until afterwards. Q. But she

never answered them on the telephone, and she never once accepted any of those offers—I mean personally? A. No, not personally. My dealings were with Mrs. Wescoat. Q. You did business with Mrs. Wescoat? A. Yes. Q. And you only know what Mrs. Wescoat told you? A. Yes." Later the witness says, the granddaughter informed plaintiffs that defendant would take $55,000 if $5,000 was paid down. Plaintiffs immediately arranged this, prepared an agreement of sale, had it executed by their purchaser, and informed the granddaughter of the fact. She instructed plaintiffs to submit the agreement to defendant's son-in-law; they complied and next day the agreement was returned to plaintiffs disapproved on behalf of defendant. The proposed sale was never made.

As the authorities quoted above hold, plaintiffs took the risk of the granddaughter's accurate transmission of the messages. Now instead of finding any evidence offered in defense which supplements plaintiffs' evidence of the declarations of the granddaughter sufficiently to bind defendant in the respect in which they differed, we find none; on the contrary both she and the defendant deny she had any instructions or authority to advise plaintiffs that the terms of sale were satisfactory to defendant if her son-in-law approved the form of the agreement, instead of approving the terms of sale generally as defendant contended. The record was therefore destitute of evidence essential to go to the jury to bind defendant.

A word may be added about the alleged admissions in the pleadings referred to in argument. The statement charged that plaintiffs were authorized to sell. That fact is admitted in the affidavit, but neither allegation nor admission covered the terms of the sale; they remained for consideration and approval by defendant when a prospective purchaser was found. The statement also alleges that plaintiffs informed the granddaughter of the terms of sale and that "defend-

ant instructed [her] to tell plaintiffs that defendant accepted said offer provided the buyer paid $5,000 on account of said consideration.'' The affidavit of defense does not admit that averment; it admits the offer but specifically denies that defendant gave the alleged instructions to her granddaughter, and, in short, avers that she instructed the granddaughter that the offer would first have to be submitted to her son-in-law for his approval because he had charge of her real estate. She also avers that plaintiffs presented the offer to her son-in-law and that he declined to approve, whereupon she rejected it. In the opinion filed below refusing judgment n. o. v. it is said: ''Under all of the testimony, particularly in view of the admissions of the affidavit of defense, we have not the slightest doubt that the only question in the case was whether Mrs. Wescoat stated to the plaintiffs that the acceptance of the offer was conditional upon her father's approval; this was for the jury; though if she did not mention the condition as directed by defendant, it would not necessarily follow that the latter could escape liability, since she admittedly put her granddaughter in a position to deal with the plaintiffs, who had a right to rely upon what she said.'' With that conclusion we cannot agree. The admissions in the affidavit have been stated, and they limit the scope of the agency. As we have said the only testimony offered to support plaintiffs' claim of the granddaughter's authority to act with regard to the terms of sale was the evidence of one of the plaintiffs, who testified only to declarations made by the granddaughter; as there was nothing more in the record on that subject, the law does not permit recovery.

Judgment reversed and here entered for defendant.