## Russ to Use *v.* Metro Life Ins. Company, Appellant.

354

Argued November 12, 1929. Be-
fore PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP,
CUNNINGHAM and BALDRIGE, JJ.

*Arthur G. Dickson,* for appellant, cited: Panopoulos
v. Metropolitan Life Insurance Company, 96 Pa. Su-
perior Ct. 325.

Robert P. Shick, for appellee.—Where there is an
ambiguity in the conditions of the policy of insurance,
its provisions will be construed most strongly against
the insurer and in favor of the insured: Krebs v.
Phila. Life Ins. Co., 249 Pa. 330; Miller v. National
Casualty Co., 62 Pa. Superior Ct. 417.

OPINION BY LINN, J., January 29, 1930:

This suit is on an insurance policy on the life of Eva J. Russ. The policy was dated December 27, 1926; a few months later, March 30, 1927, the insured died of chronic pulmonary tuberculosis. Her husband, Raymond Russ, the beneficiary, furnished proofs of death, and on April 14, 1927, assigned his interest in the contract to the use-plaintiff. The insurance company conducted an investigation lasting some months and declined liability on the ground of breach of condition, and, in discharge of the contract, tendered $7.50—the premium at 50 cents per week for 15 weeks—but the tender was declined. Suit followed, with verdict and judgment for the use-plaintiff. Defendant complains of trial errors and of the refusal of its motion for judgment n. o. v.

The policy provided: "This policy constitutes the entire agreement between the company and the insured and the holder and owner hereof. Its terms cannot be changed, or its conditions varied, except by the express agreement of the company evidenced by the signature of its president or secretary. Therefore, agents (which term includes also managers and assistant managers) are not authorized and have no power to make, alter, or discharge contracts, to waive forfeitures ...... If ...... (2) ...... the insured ...... has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, unless such ......, medical attention or previous disease is specifically recited in the 'space for endorsements' on page 4 in a waiver signed by the secretary, ...... then, in any such case, the company may declare this policy void and the liability of the company in the case of any such declaration or in the case of any claim under this policy, shall be limited to the

356

return of premiums paid on the policy, except in the case of fraud, in which case all premiums will be forfeited to the company." No waiver of prior medical attention or disease was endorsed on the policy.

The uncontradicted evidence is that in 1925 the insured was a patient in Philadelphia General Hospital suffering with pleurisy, enlarged spleen, enlarged liver, pulmonary tuberculosis and tertiary syphilis. During her treatment there, about a pint of amber colored fluid was withdrawn from the pleural cavity. She left the hospital, one of the physicians testified, before she was cured. The syphilitic condition was proved by a blood test and by a Wasserman test. The failure to have that medical attention recited on the policy constituted a breach of the condition contained in the policy and required binding instructions for the defendant (Panopoulos v. Metropolitan Life Insurance Company, 96 Pa. Superior Ct. 325; Skruch v. Metropolitan Life Ins. Co., 284 Pa. 299; Connell v. Life Ins. Co., 16 Pa. Superior Ct. 520) or judgment n. o. v.

That result is not affected by the assignment of the insurance to the use-plaintiff; he has no better right to recover than his assignor. He took the assignment in the following circumstances. About two weeks after the death of the insured, the beneficiary appealed to the use-plaintiff for aid. The use-plaintiff testified that he then telephoned to defendant's manager, Stokes, in Germantown, Philadelphia, and that Stokes asked him to advance money for the funeral expenses of the insured, saying that "he [Stokes] would be responsible for the claim for her burial;" that Stokes told him that "there was some delay [in paying the insurance] only on account of the fact that this woman had died so soon after the policy was created. But he said 'the reports are in and you will absolutely be paid' ......"
There was correspondence, received in evidence, between the use-plaintiff and the defendant, some of it

written to Stokes and some of it to the home office in New York. In the letters of the defendant it is stated that the claim is in process of investigation; in one of them it is said that the delay is due to difficulty in finding one of the doctors who treated the insured during the period she was in the hospital in 1925. As late as September 7, 1927, the use-plaintiff furnished to defendant's home-office a medical certificate stating that a physician in 1925 sent the insured to the Philadelphia General Hospital "for treatment of pleurisy and enlarged spleen." December 15, 1927, defendant, having elected to declare the policy void, tendered both to the use-plaintiff and to his assignor the sum of $7.50, being the 15 weeks premiums that had been collected. Stokes testified that he was manager of the Germantown branch of defendant and that he informed the use-plaintiff that he had authority to pay the claim on being satisfied that it was valid, but that his investigation disclosed that the insured had been ill and that the illness was under investigation, and that a conclusion could not be reached until the investigation was completed. He testified that the use-plaintiff informed him as follows: "He then told me that because of political reasons in Germantown, that he could ill afford to have that section or that race have any claim rejected, or, rather, to see this person not buried, that it was to his interest to see that this person was buried, and he was going to take an assignment of the claim which he would give to me for me to take up with the company and that the claim would be paid. Q. He said that? A. He said that to me and I said 'You are taking the responsibility yourself; I would not assume it ......"

By that conduct, appellee contends, that defendant "waived" provisions of the policy and is estopped from defending the suit; that is, as we understand appellee, that defendant agreed that even if its investigation disclosed that it was not liable and that it had a

lawful defense to the claim for the amount of the insurance, it would not assert the defense; or, in other words, that defendant would not exercise its option to declare the policy void for breach of condition. Certainly the company, as distinguished from Stokes, did nothing to mislead the use-plaintiff. The inquiry then becomes whether Stokes did so in circumstances which bind the defendant. It was the duty of the use-plaintiff to ascertain the extent of Stokes' authority; he could not take Stokes' word for it, except at his own risk; if he was mistaken in the scope of Stokes' authority, he cannot charge defendant. The burden of proving both the fact of agency and its scope lay on the use-plaintiff. The record contains no evidence that it was within the scope of the agency of Stokes to agree on behalf of defendant that it would not set up the breach of condition as a defense to the claim. The use-plaintiff's evidence of alleged declarations made to him by Stokes are not evidence of the agency and the scope of the agent's authority; Van Pelt v. Spotz, 92 Pa. Superior Ct. 213, 215; Zavodnich v. Rose, 297 Pa. 86, 90; and Stokes' evidence does not supply the omission; he states that he was authorized to pay on being satisfied that the claim was valid but that he was investigating the condition and had not yet completed the investigation. His statement that he had authority is a mere legal conclusion unsupported by facts in evidence.

Here the use-plaintiff had never seen the policy and did not examine it before he became assignee. If he had examined it, he would have observed by one of the provisions already quoted that Stokes had no authority "to make, alter, or discharge contracts [or] to waive forfeitures." Something is said on behalf of appellee to the effect that a notice on the face of the policy was an invitation to policy holders to deal with district managers in the settlement of claims. The notice is as follows: "If claim arises, claimant should

personally call at district office through which prem-
iums have been paid. Do not employ undertaker or
anybody else to collect. Pay neither doctor, under-
taker nor agent for preparation of claim papers. De-
liver the policy only to the company's representative.
The company is glad to pay and there is no necessity
for help or alleged influence in collecting." While it
is in evidence for all purposes, and though the use-
plaintiff, not having had the policy, did not act on
the faith of it, it is not evidence that the agent, Stokes,
had any authority to create the estoppel that appellee
would establish. And the use-plaintiff's conduct, after
he became assignee, is some evidence that he did not
regard the conduct of Stokes as creating an estoppel,
for he engaged in a correspondence direct with the
home office on the subject, as has been stated; nor
on this point, is it material that the defendant took
8 or 9 months to complete its investigation and elected
to limit its liabililty to the return of the premiums, in
accordance with one of the conditions of the policy.
While the correspondence shows that there was reason
for the apparent delay, neither the beneficiary nor
the use-plaintiff was led to do anything by it. It is
not contended that by the 14th of April when the as-
signment was made, and the money advanced by the
use-plaintiff, that an unreasonable time had elapsed to
enable the defendant to decide what it should do with
regard to the breach of condition, even if we assume
for the present (though without deciding) that an un-
reasonable time was ultimately taken in investigating
the claim.

The judgment is reversed and the record is remitted
with instructions to enter judgment for the plaintiff
in the sum of $7.50 with interest.