# Eby *v*. The Travelers Insurance Company, Appellant.

*Insurance — Accident insurance — Swallowing of bristles from tooth brush—Death—Declarations to wife of deceased—Statements of deceased to physician—Res gestæ—Hearsay—Practice, C. P.— Trial—Evidence—Acquiescence—Recalling witnesses in surrebuttal —Discretion of court—Appellate practice.*

1. In order to be admissible as part of the res gestæ declarations must be made under such circumstances as will raise the reasonable presumption that they are spontaneous utterances of thoughts created by, or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the results of premeditation and design.

2. Where sickness or affection is the principal fact in litigation the res gestæ are the declarations tending to show the reality of its existence, and its extent and character.

3. Where in an action on an accident insurance policy it appeared that the insured shortly after brushing his teeth was seized with violent coughing and choking, which resulted in his death, statements made by the deceased to his wife as soon as he was able to speak after the spasms of choking had ceased, to the effect that the choking was caused by bristles from his tooth brush becoming lodged in his throat, were admissible as part of the res gestæ.

4. A physician may testify in favor of his patient as to statements made by the latter in relation to his condition, symptoms, sensations and feelings made for the purpose of receiving medical advice, but not as to the patient's declarations as to the cause of the injury. Such statements are in the nature of hearsay, admitted on the ground of necessity, as such facts are incapable of proof by other evidence.

5. Where in such case the court limited the physician to statements made by the deceased as to his symptoms and sensations, but the physician went beyond the ruling of the court and stated that deceased had told him that his illness was caused by the lodgment of the tooth brush bristles in his throat, but no objection was made by the defendant to the answer and there was no motion to strike it out and no request to charge the jury to disregard it, the fact that the answer was permitted to go unchallenged and remain-in the case as part of the testimony was not reversible error.

6. Where in such case a physician who had performed the post-

mortem examination upon the body of deceased testified in chief fully as to the condition in which he found the brain and stated that it was in a normal condition, thereby contradicting plaintiff's contention that deceased had died from cerebral hemorrhage caused by the choking, and plaintiff then called a physician in rebuttal who testified to finding a disintegrated spot in the brain, it was not reversible error to refuse to permit defendant's witness to be called in surrebuttal to testify again to matters about which he had testified in chief.

Argued April 23, 1917. Appeal, No. 393, Jan. T., 1916, by defendant, from judgment of C. P. Cumberland Co., Sept. T., 1916, No. 221, on verdict for plaintiff, in case of Jennie A. Eby v. The Travelers Insurance Company, Hartford, Connecticut. Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit on a policy of life insurance. Before SADLER, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $7,702.50 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*Paul Smith,* of *Snodgrass & Smith,* with him *Herman Berg, Jr.,* for appellant.—There was no competent proof that the death of the insured resulted from the accident. The declarations of the deceased as to the facts and circumstances surrounding the alleged accident were improperly admitted in evidence: Commonwealth v. Werntz, 161 Pa. 591; Keefer v. Pac. Mut. Life Ins. Co., 201 Pa. 448; Elkins v. McKean, 79 Pa. 493; Penna. R. R. Co. v. Lyons, 129 Pa. 113; Coll v. Easton Transit Co., 180 Pa. 618; Hanover R. R. Co. v. Coyle, 55 Pa. 396; Smith v. Stoner, 243 Pa. 57; Travelers' Ins. Co. of Chicago v. Mosley, 75 U. S. 397; Ogden v. Penna. R. R. Co., 1 Monaghan (Pa.) 249; Hill v. Central Accident Ins.

Co., 209 Pa. 632; Briggs v. East Broadtop R. R. & Coal
Co., 206 Pa. 564; Tyson v. Union Traction Co., 199 Pa.
264; Greed v. Manufacturers' Light & Heat Co., 238 Pa.
248; Waldele v. N. Y. Cent. & Hudson River R. R. Co.,
95 N. Y. 274; Eastman v. Boston & Maine R. R., 43 N. E.
Repr. 115; Richmond & Danville R. R. Co. v. Hammond,
9 So. Repr. 577; McCarrick v. Keady, 40 Atl. Repr. 603;
Hill v. Ætna Life Ins. Co., 63 S. E. Repr. 124; Baum-
gardner v. Southern Ry. Co., 43 S. E. Repr. 948; Estell
v. State, 51 N. J. Law 182 (17 Atl. Repr. 118); Louis-
ville & Nashville R. R. Co. v. Pearson, 12 So. Repr. 176;
Barnes v. Inhabitants of Rumford, 52 Atl. Repr. 844;
Dunlap v. Chicago, Rock Isl. & Pac. Ry. Co., 129 S. W.
Repr. 262; Steinhofel v. Chicago, Milwaukee & St. Paul
Ry. Co., 65 N. W. Repr. 852; Roach v. Western & At-
lantic R. R. Co., 21 S. E. Repr. 67.

*Conrad Hambleton,* of *Hambleton & Brinton,* with
him *J. H. Reiff,* for appellee.—The declarations made by
the insured to his wife in relation to the accidental lodg-
ment of tooth brush bristles in his throat which caused
violent coughing, choking and strangling were admis-
sible as part of the res gestæ: Commonwealth v. Werntz,
161 Pa. 591; Travelers' Ins. Co. of Chicago v. Mosley, 75
U. S. 397.

The statements of the decedent in relation to his in-
ternal condition, sensations, feeling and symptoms made
for the purpose of securing medical advice were com-
petent: Lichtenwallner v. Laubach, 105 Pa. 366; Lake
Shore & Mich. Southern Ry. Co. v. Rosenzweig, 113 Pa.
519; Gosser v. Ohio Valley Water Co., 244 Pa. 59; No.
American Life & Accident Ins. Co. v. Burroughs, 69 Pa.
43; Dabbert v. Traveler's Ins. Co., 2 Cinc. Super. Repr.
98 (1872-73).

The case was for the jury: Taylor v. General Accident
Ins. Corp., 208 Pa. 439; McCullough v. Railway Mail
Assn., 225 Pa. 118.

OPINION BY MR. JUSTICE MESTREZAT, June 30, 1917:

This suit was brought on an accident insurance policy by which the defendant company agreed to pay the plaintiff $7,500 in case of the death of her husband "resulting from bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means."

The plaintiff alleges in her statement that her husband, Ben Eby, died on April 13, 1916, and that his death was caused solely by an accident within the terms of the policy; that about eight o'clock on the morning of that day, while he was brushing his teeth, a number of the bristles of the tooth brush which he was using became loosened from the brush and lodged in his throat, causing violent coughing, choking, vomiting and strangling, resulting in his death about noon of the same day. The defendant company, in its affidavits of defense, denies these averments, and alleges that the death of the assured resulted directly and exclusively, and independently of any accident, from organic lesions or disease, and not from an accident within the meaning of the policy.

It appears from the testimony of his wife that Eby was apparently in good health prior to the accident, and had not theretofore been in bad health; that about eight o'clock, on the morning of April 13th, he arose from his bed and went into the bathroom, was suddenly seized with violent choking and strangling, became sick, and died about noon of that day. Under objection and exception, the plaintiff introduced testimony to prove the cause of his death, as laid in the statement.

Medical experts, including the attending physician, were called by the plaintiff, and they testified that, in their opinion, Eby's death was caused by cerebral hemorrhage, superinduced by coughing, strangling and vomiting. The physicians called by the defendant, among them being the physician who held the post mortem examination two months after the death, were

of the opinion that death did not result from cerebral hemorrhage but from natural causes; that the symptoms testified to by the attending physician were not those of cerebral hemorrhage; and that such hemorrhages are not caused by spasms of coughing.

The learned trial judge, in an exceptionally clear charge, submitted to the jury to determine whether (a) Eby sustained internal injury from the bristles of the tooth brush which became unexpectedly detached and lodged in his throat, causing the choking and producing a hemorrhage which resulted in death; (b) if he did sustain an injury as alleged, it was effected through external, violent and accidental means, independently of all other causes, within the sense and meaning of the policy of insurance; and (c), if he was injured as claimed, that injury was the proximate cause of his death. The jury returned a verdict for the plaintiff, and, from the judgment entered thereon, the defendant has appealed. The errors assigned are to certain rulings on testimony, to a paragraph in the charge referring to certain evidence admitted under objection, and refusal of points for charge, all of which were requests for binding instructions for defendant.

The questions involved, as stated by appellant, are: The admissibility of the testimony of the wife as to declarations of the deceased made fifteen minutes or more after the happening of the alleged accident; the admissibility of statements as to the cause of illness made by the deceased to the attending physician two hours after the accident; the admissibility of evidence offered by defendant in surrebuttal; and the refusal of binding instructions.

The appellant contends that the declarations made to the wife were not part of the res gestæ, as they had no causal connection with the accident, were too far removed, in point of time, from it, and, therefore, made after a break in the continuity of events which changed them into the narration of a past occurrence, they do not

exclude the presumption that they were the result of premeditation and design.

In determining the first question, it is necessary to direct attention to Mrs. Eby's testimony, showing the declarations of the deceased and the circumstances under which they were admitted, in connection with the ruling of the court. She testified that her husband was never sick; that he was well when they retired on the night of April 12th, and slept soundly all night; that she arose about half past seven on the morning of the 13th, her husband being then awake; that she dressed and went downstairs to prepare breakfast, and about half an hour later heard her husband get up and go to the bathroom, this being about eight o'clock; that she heard the water running and then heard him coughing and strangling, and ran upstairs "and he was strangling; the water was running from his mouth. He tried to tell me to 'phone for the doctor but couldn't." He tried to talk; she took him back to the bathroom and gave him some listerine. "His face was black—black as a stove, and he was choking and strangling." Being asked how long it was before he recovered his speech, she said, "about ten or fifteen minutes before he could speak to me." On her being asked: "Then what did he say?" an objection was interposed, and plaintiff made an offer to prove all the acts and declarations of the insured from the time she heard him coughing up to the time of his death, as part of the res gestæ. The trial judge ruled that, "it appearing from the testimony that the wife went to the bathroom upon hearing her husband coughing; that she found him unable to speak for ten or fifteen minutes because of his physical condition, but that he did speak immediately upon acquiring the power of speech; and it appearing that the whole act was one continuous act, . . . . . the statements are to be treated as part of the res gestæ and are admissible in evidence." Mrs. Eby was then asked: "When your husband . . . . . . recovered his power of speech, or was able to speak, what did he say to you?"

She answered: "I asked what happened, and he said he was cleaning his teeth, and some bristles came out of the brush and lodged in his throat and he almost choked to death because they were sticking in his throat." She testified that she gave him some listerine which cleared his throat for a little while, and he said that he thought they had gone down; that he complained of a severe pain in his head and laid down for awhile, but later went downstairs. She said that she saw no bristles in his throat, though she looked, but that there were loose bristles on the washstand and in the basin. She also testified that while he was still standing at the basin he said, "I will never use a bristle brush again, I am going to get a rubber one to-day." She telephoned Dr. Kirkpatrick sometime after nine o'clock, and the doctor came about ten and gave him some tablets. The doctor was summoned again near noon, and shortly after he arrived her husband had a severe coughing and choking spell, followed by a hemorrhage from the nose and a convulsion, in which he died within a few minutes. Dr. Kirkpatrick corroborated Mrs. Eby's testimony as to what occurred after he arrived at the house.

The ruling of the court admitting this evidence is challenged in the first assignment of error. We are of opinion that the declarations or statements made by the assured to his wife were part of the res gestæ, and were, therefore, properly admitted in evidence. It will be observed that the assured had been in good health and was free from all ailments prior to the attack of severe coughing and strangling, which attracted the attention of his wife on the morning of the accident. The medical testimony offered by the plaintiff justified the finding that he had no organic trouble. Mrs. Eby heard her husband go to the bathroom about eight o'clock, heard the running water, his coughing, and ran to his assistance, and found him choking and strangling. As soon as he could speak, in ten or fifteen minutes, these declarations or statements were made. They were, therefore,

made at the first possible moment, and, hence, were the spontaneous utterances of the assured. The first utterances of one who by protracted efforts at relief has been enabled to articulate may be competent after a considerable interval; 16 Cyclopedia of L. & Pr. 1254. There was close causal connection between the accident and the statements made by the assured, and there was no break in the continuity of events which would change them into the narration of a past occurrence. The evidence does not warrant the conclusion that they were made with premeditation or with any ulterior purpose in view. They were clearly incidental to, and illustrative of, the accidental occurrence and emanated from it. The case is, therefore, brought within the definition of "res gestæ" stated in the text books and adopted by our own and the federal courts. Mr. Wharton, Law of Evidence, sec. 259 (3d ed.), says that "the res gestæ are the circumstances which are the undesigned incidents of the litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable....Their sole distinguishing feature is that they must be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for or emanations of such act, and are not produced by the calculated policy of the actors." A clear and concise statement of the rule as to declarations is given in 21 Am. & Eng. Encyc. of Law (1st ed.) 101, where it is said that if they "are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thoughts created by, or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the res gestæ." In Hanover R. R. Co. v. Coyle, 55 Pa. 396, a peddler's wagon was struck and the peddler was injured by a locomotive, and we held that the declaration of the engineer, made at the time of, or immedi-

ately after, the accident was admissible for the purpose of showing that the train was behind time, to show carelessness and negligence, and as part of the res gestæ. In delivering the opinion, AGNEW, J., said (p. 402): "We cannot say that the declaration of the engineer was no part of the res gestæ. It was made at the time of the accident, in view of goods strewn along the road by the breaking up of the boxes; and seems to have grown directly out of, and immediately after, the happening of the fact." The declaration was held to be "a part of the very transaction itself." In Elkins, Bly & Co. v. McKean, 79 Pa. 493, where the injury resulting in death was caused by the explosion of an oil lamp, we held that the statements as to the cause of the accident, made by the injured party at and about the time of its occurrence, while he was covered with fire, were competent as part of the res gestæ. In the opinion it was said (p. 501): "What McKean said as to the cause of the accident when found enveloped in the flames of the oil, or within a few minutes afterwards, was clearly competent evidence as a part of the res gestæ." We have uniformly adhered to the doctrine of these authorities in our later cases: Commonwealth v. Werntz, 161 Pa. 591; Coll v. Easton Transit Co., 180 Pa. 618; Smith v. Stoner, 243 Pa. 57; Tomczak v. Susquehanna Coal Co., 250 Pa. 325.

The Supreme Court of the United States has considered the question in Travelers' Insurance Co. of Chicago v. Mosley, 75 U. S. 397. That was a suit on an accident insurance policy brought by the beneficiary after the death of the assured which resulted from the accident. It appeared that the assured left his bed on the second floor of his residence in the nighttime, and, when he returned, he told his wife that he had fallen down the back stairs and almost killed himself, and that he had hit the back part of his head. Similar declarations were subsequently made to the son of the assured. The declarations were held to be a part of the res gestæ and admitted, under objection, to prove that the assured had

fallen down the stairs. The Supreme Court sustained the ruling, and, in delivering the opinion, Mr. Justice SWAYNE said (p. 404, 408) : "Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings are original and competent evidence. Those expressions are the natural reflexes of what it might be impossible to show by other testimony. If there be such other testimony, this may be necessary to set the facts thus developed in their true light, and to give them their proper effect. As independent explanatory or corroborative evidence, it is often indispensable to the due administration of justice. Such declarations are regarded as verbal acts, and are as competent as any other testimony, when relevant to the issue......Here the principal fact is the bodily injury. The res gestæ are the statements of the cause made by the assured almost contemporaneously with its occurrence, and those relating to the consequences made while the latter subsisted and were in progress. Where sickness or affection is the subject of inquiry, the sickness or affection is the principal fact. The res gestæ are the declarations tending to show the reality of its existence, and its extent and character. The tendency of recent adjudications is to extend, rather than to narrow, the scope of the doctrine."

The second question for consideration, and it is raised by the second assignment, is whether the court erred in admitting statements as to the cause of his illness made by the assured to the attending physician two hours after the accident. It is well settled that a physician may testify in favor of his patient to a statement by the latter in relation to his condition, symptoms, sensations and feelings made for the purpose of receiving medical advice. Such statements are in the nature of hearsay and, therefore, would be excluded under the general rule, but the courts admit them on the ground of necessity, as being incapable of proof by other evidence. While the competency of the evidence for such purpose is conceded,

it is contended by the appellant that the court permitted the attending physician to transcend the limits of the rule, and testify to a statement by the patient as to the cause of his injury. This is a misapprehension of the ruling of the court. The question was raised more than once, and, on each occasion, the court excluded statements made to the physician as to the cause of his injury. The plaintiff first offered to prove by the physician that Eby stated to him over the telephone that bristles from a tooth brush had lodged in his throat and caused him to become ill. On objection, the court ruled that "the witness may testify to any statements made by the assured to him which showed his present condition, symptons, sensations or feelings at the time the physician was called to treat him, but that he could not give any declarations as to the cause of the injury, which may have been stated by the decedent." The witness then proceeded to testify to the conversation over the telephone, and stated that the assured said he had met with a little accident, whereupon the court of its own motion directed that part of the answer to be struck out. Subsequently, the plaintiff's counsel made the following offer: "I am going to ask the witness [the physician] what Ben Eby, the insured, told him with relation to what had happened to him, and what the doctor did, predicated upon what the insured had told him." On objection by defendant, the court ruled: "I will sustain you on that point [that the statement was a narration of a past occurrence]. It is not part of the res gestæ. We will allow the witness to testify as to the statements made by the decedent showing his condition, symptoms, sensations and feelings, these statements having been made to the doctor for the purpose of giving the information necessary for treatment. To that extent we admit the offer." The counsel for plaintiff then directed the witness to state the conversation he had with Eby, but, at the suggestion of the court, the question was modified so as to confine the conversation to what occurred after the phy-

sician arrived at the house for the purpose of treating his patient professionally.

It appears, therefore, that the court did not hold, as claimed by appellant, that the physician could testify to statements or declarations of his patient as to the cause of his injury, but distinctly ruled to the contrary, and in each instance when the question was raised properly confined the proof to statements of the condition, symptoms, sensations or feelings of the patient when the physician was called to treat him, which, as above pointed out, was clearly competent. It is quite true that the witness did go beyond the ruling of the court and testify that the assured told him his illness was caused by the lodgment of the tooth brush bristles in his throat, producing violent coughing and choking which, he feared, had ruptured something. No objection, however, was made by the appellant to the answer, nor was there a motion to strike it out, nor was the court asked to charge the jury to disregard it. So far as the record discloses, the appellant acquiesced in the reply. The court had already repeatedly excluded such testimony, as being the narration of a past occurrence, and, therefore, not competent, and a motion promptly made to strike out that part of the witness's answer would necessarily have prevailed. The objectionable answer was permitted to go unchallenged by the appellant, and, therefore, it remained in the case as part of the testimony: Broadnax v. Cheraw & Salisbury R. R. Co., 157 Pa. 140.

There is no merit in the seventh assignment, which alleges error by the court in refusing to permit Dr. Wadsworth to be called by defendant in surrebuttal. He performed the post mortem examination, and, being called by the defendant, testified in chief fully as to the condition in which he found the brain, and that it was in a normal condition. The plaintiff then called physicians in rebuttal, and they testified to finding a disintegrated spot in the brain. It is, therefore, clear that the learned court below did not abuse its discretion in refus-

ing to permit the witness to be called in surrebuttal to testify again to matters about which he had testified in chief.

The assignments of error are overruled, and the judgment is affirmed.