Brelish, Admx. *v.* Prud. Ins. Co. of America,
Appellant.

**2**

Argued March 8, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*A. A. Vosburg,* of *Vosburg and Vosburg,* for appellant.

*Russell J. O'Malley,* of *O'Malley and O'Malley,* for appellee.

Opinion by Cunningham, J., April 17, 1933:

On March 12, 1928, the defendant insurance company issued an industrial policy (without a medical examination) upon the life of Anna Brelish, a schoolgirl then about fourteen years of age. The policy contained, inter alia, the following provision: "This policy shall not take effect if the insured die before the date hereof, or if on such date the insured be not

in sound health, but in either event the premiums paid hereon, if any, shall be returned."

The insured died November 5, 1928; the premiums, aggregating $7.60, had been duly paid and demand was made for payment of the amount alleged to be due under the policy—$516, with interest.

The substantial defense interposed to the suit on the policy was that it had never been in effect because the insured, at its date, "was not in good health, as she then and there well knew, but was suffering from a serious disease of the heart of an incurable nature and had been suffering from said disease for a long time, to wit: more than a year prior to said date." Defendant tendered, and plaintiff refused to accept, the return of the premiums.

Both sides introduced evidence upon the question of fact arising under the pleadings; the trial judge refused their respective requests for binding instructions and submitted the case to the jury; the verdict was in favor of the plaintiff for the full amount of her claim and this appeal is by the defendant from the judgment entered thereon, after its motions for a new trial and for judgment in its favor upon the whole record had been denied.

As correctly stated by the learned trial judge, the issue finally narrowed down to the question whether or not Anna Brelish was in "sound health when the policy was issued."

Every precaution seems to have been taken to direct the attention of the jury to the single point upon which it was their duty to turn the case one way or the other.

At the conclusion of his general charge the trial judge said: "In addition to rendering your verdict counsel for the defendant ask me to submit to you two particular questions.

"The first is: 'On the date when the policy of in-

surance was delivered was Anna Brelish, the person insured, in good health?' You will answer yes or no; and upon that, of course, depends the rest of your verdict. If she was in good health on that date the plaintiff is entitled to recover the amount of the claim; if she was not in good health, then the plaintiff is only entitled to recover $7.60.

"The second question is: 'On the date when the policy was issued and delivered was Anna Brelish suffering from a form of heart trouble of a serious nature?' If you answer yes, that she was suffering from such a heart condition, then your verdict should be only for the smaller amount. If your answer is no, of course your verdict will be for the larger amount." To the first of these written questions the jury subscribed the answer, "yes", and to the second, "no."

Of the nine assignments of error, those meriting consideration relate to the refusal of the trial judge to strike out the answer of the mother of the insured to a question relative to the apparent condition of the health of her daughter when the policy was issued; the adequacy of the charge; and the denial of defendant's motions for judgment n. o. v., or, at least, a new trial.

The main contention in behalf of the insurance company is that the trial judge should have directed that any verdict for plaintiff could not exceed $7.60 (without costs) because the evidence of the unsoundness of the health of Anna Brelish when the policy was procured was so overwhelming as to leave no doubt upon that question.

Our inquiry, therefore, is (a) whether the trial judge was justified in submitting the case to the jury, and (b), if he was, whether a new trial should now be directed upon the ground that the verdict was the result of a capricious disbelief of the evidence.

An examination of the testimony is essential to the proper disposition of these inquiries and it must be borne in mind that the company had the burden of proving the insured was not in sound health: Console v. Prudential Ins. Co., 67 Pa. Superior Ct. 52.

On behalf of appellant, Dr. Louis Breskman testified that upon a physical examination of the insured in July, 1927, he found she was suffering from "an acute endocarditis......had an inflammation of the entire inside of the heart......was cyanotic and pale and practically dying then." The witness described her condition as progressive and incurable, and expressed his professional opinion that she could not have been in sound health when the policy issued.

Dr. F. T. Cavill, also called by appellant, stated he examined the insured in the spring of 1928 as well as a few days before her death. Referring to the first examination, he said: "The heart was enlarged, the valves of the heart weren't covering up the opening into the great vessels of the heart. It evidently came from an attack of rheumatism sometime before, and the valves were leaking...... Q. Is the condition such as you described in this heart or in any heart a curable one? A. It is incurable."

A collector and assistant superintendent for appellant testified he had seen the insured frequently and had refused an application for insurance upon her life "on account of her apparent condition of health."

In rebuttal, Rose Brelish, an older sister, testified the insured "looked healthy, played with other children and helped with the household chores." When Kathleen Brelish, mother of the insured and plaintiff in the case, was on the stand she was asked whether, in her opinion, her daughter "was in an apparent sound condition of health in March, 1928." The objection of counsel for appellant was overruled and the witness answered, "she was healthy."

The refusal of the trial judge to strike out this testimony is the basis of the fourth assignment. We are not convinced that its admission was error; it was of the same character as that previously introduced by appellant through its collector who testified to a contrary opinion. The plaintiff also asserted that Dr. Breskman had not examined the insured upon the occasion of his single visit, but had been called to see a younger sister, then ill with measles. A neighbor testified the insured "looked just the same as anyone else." Plaintiff also introduced a death certificate signed by appellant's witness, Dr. Cavill, for the purpose of showing that he stated therein he had not attended the insured prior to her last illness.

An attentive reading of all the testimony has convinced the writer that its weight was clearly with appellant; but, even if the company's testimony had not been impeached or contradicted upon any material matter, the trial judge could not have taken this case from the jury.

Whatever doubt or confusion may have heretofore existed concerning the rule applicable to uncontradicted oral testimony, has been removed by the majority opinion of the Supreme Court in the recent case of Nanty-Glo Borough v. Amer. Surety Co., 309 Pa. 236, 163 A. 523. There the question was the liability of the defendant as surety upon the official bond of a defaulting tax collector. The evidence for the plaintiff was oral and uncontradicted; the collector admitted his embezzlement and the clerk of council testified he gave the required notice to the defendant company. It offered no evidence. If believed, the uncontradicted evidence of the collector (Estep) and clerk (Carlisle) fully and clearly established the liability of the defendant; the trial judge accordingly directed a verdict for the borough. Upon appeal by the surety from the judgment against it, Mr. Justice Drew,

speaking for the majority of the Supreme Court, said: "We are of opinion that appellant is clearly right in its contention, and that a new trial must be had. In granting plaintiff's motion for binding instructions, the trial judge assumed the testimony of Carlisle and Estep to be true. This he had no right to do, even though it was uncontradicted. In the words of Justice SHARSWOOD, 'However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence': Reel v. Elder, 62 Pa. 308. This rule is firmly established: Second National Bank v. Hoffman, 229 Pa. 429; Newman v. Romanelli, 244 Pa. 147; McGlinn Distilling Co. v. Dervin, 260 Pa. 414; see Phila. v. Ray, 266 Pa. 345. The credibility of these witnesses, without whose testimony plaintiff could not have recovered, was for the jury, and plaintiff's motion for binding instructions should not have been granted."

In the case at bar, the trial judge followed the rule thus authoritatively declared and we think the submission was adequate. As we have seen, the issue was clearly defined and the jury told that it was the fact relative to the health of the insured which must control and not the knowledge of the insured, or of the company, as to her condition. Moreover, the judge asked at the conclusion of the charge not merely whether he had misstated any evidence but also whether there was any point concerning which he had neglected to charge.

None of the decisions of this court, cited and relied upon by counsel for appellant, is out of harmony with the above ruling of our Supreme Court. In Panopoulos v. Metrop. L. Ins. Co., 96 Pa. Superior Ct. 325,

the evidence was not wholly oral; hospital records, conclusively establishing the contention of the insurance company, were introduced. Such evidence was also present in Russ v. Metrop. L. Ins. Co., 98 Pa. Superior Ct. 353, and Gimbel v. Aetna Life Ins. Co., 95 Pa. Superior Ct. 1. In these cases the documentary evidence demonstrated that the respective insureds had made false answers to questions contained in their written applications for insurance.

If this had been the first trial of this case, we would be disposed to reinstate the motion for a new trial. The case, however, was originally tried in September, 1931, and before the same judge; a new trial was granted upon the ground that the verdict then rendered for the plaintiff was "against the weight of the evidence." We think the court below has fully vindicated its refusal of a third trial in the following excerpt from its opinion: "The plaintiff was the mother of the decedent. She testified that the physicians had never examined the decedent and the testimony of the physician who attended decedent in her last illness was in conflict with the death certificate given by him. The credibility of the medical testimony was thus for the jury instead of for the court. The trial judge was impressed with the medical testimony and gave a new trial when the first trial resulted in a verdict for the plaintiff. As the second trial resulted in the same manner, and the case must be left to the jury, there is no reason for continuing to grant new trials."

We have considered all the assignments but are not convinced any of them should be sustained.

Judgment affirmed.