Jones *v.* Industrial Health, Accident & Life Insurance Company, Appellant.

Argued October 23, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*George J. Edwards, Jr.,* with him *George J. Edwards, III,* and *Ralph S. Croskey,* for appellant.

*Nathan Agran,* with him *Henry W. Balka,* for appellee.

OPINION BY STADTFELD, J., January 29, 1937:

This is an action of assumpsit brought by the beneficiary of a policy of insurance in the sum of $250, issued by the defendant. Maude Jones, the plaintiff, is the mother of Eugene Jones, the insured, who was born on March 6, 1935. She caused the baby's life to be insured with the defendant in the sum of $250 on March 18, 1935, when the baby was twelve days old. Twenty-two days later, viz, April 9, 1935, the child died.

The defense was that the insured was not in good health at the time of issuance of the policy.

The trial March 25, 1936, in the Municipal Court of Philadelphia County before LEWIS, J., without a jury, resulted in a finding for plaintiff in the sum of $264.40.

The plaintiff made a prima facie case by offers of parts of the pleadings and the policy, and rested.

The defendant offered in evidence, the Certificate of Death from the Bureau of Vital Statistics, Pennsylvania' Department of Health, dated April 11, 1935, which showed that the primary cause of death was marasmus, duration one month; the contributory cause was immaturity. The defendant also offered in evidence the proof of death, statement of claimant, and records of the Children's Hospital where insured was taken on April 5, four days prior to his death, and eighteen days after insurance.

Defendant called as a witness, Dr. George A. Enion, who testified substantially that, in his opinion, based on the testimony he heard in court and on the hospital records, the child developed marasmus immediately after birth.

In rebuttal, the plaintiff called Mr. Edward Gorman, the agent who wrote the insurance for defendant company, who testified: "Yes, I seen the child the day we have written it ...... And I seen it for about three straight weeks afterward, each week. ...... And he seemed right to me." The mother testified that the

baby "appeared to be well to me. I was around him all the time. I couldn't see any difference. ...... He ate everything I gave him. ...... Yes, he ate well." Miss Benedict, who is associated with the Visiting Homes Society, 1340 Lombard Street, Philadelphia, testified that she saw the baby on March 7, 1935, and on March 9, 1935, and that it was "apparently normal; weighed five and three-quarter pounds." To the same effect was the testimony of Eugene Jones, the child's father, Clara Mullin, the grandmother, and Howard Wright, who lived in the house when the child was born. Dr. Samuel X. Radbill testified for the plaintiff to the effect that while it was difficult to say when the child might have developed the disease, it was his judgment that it was shortly before it came to the hospital.

The only assignments of error are the refusal of binding instructions and the dismissal of motion for judgment non obstante veredicto.

Appellant relies upon Section 21 of the Act of June 7, 1915, P. L. 900 as amended by the Act of April 28, 1927, P. L. 498 and the Act of May 24, 1933, P. L. 979 (35 PS 471), dealing, inter alia, with death certificates which provides: "......any such copy of the record of a birth or death or marriage when properly certified by the State Registrar to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts therein stated."

Section 7 of the Act of June 7, 1915, P. L. 900, as amended by the Act of May 24, 1933, P. L. 976 (35 PS 457), provides that the certificate of death, among other things, shall contain the following item: "(17) Cause of death, including the primary and immediate cause, and contributory causes or complications, if any, and duration of each."

Appellant claims that the certificate from the Bureau of Vital Statistics, furnished by plaintiff to defendant company, and the facts stated therein were binding on

plaintiff, unless contradicted and this showed the duration of the disease was one month; likewise, the statement of claimant furnished to defendant, stating the cause of death to be marasmus, and contributory cause as immaturity. The proof of death shows a duration of four days' illness, to-wit: April 5 to April 9, 1935; likewise, the claimant's statement shows a duration of four days' illness. Dr. S. G. Wolfe, an interne at the Children's Hospital, signed both the death certificate and the proof of death. In the death certificate, this interne certifies that the cause of death was marasmus, contributory immaturity, the duration of which was one month; in the proof of death, he certified that the cause of death was immaturity, contributory cause malnutrition and duration four days. This apparent inconsistency in itself was enough to raise an issue of fact for a jury's consideration.

The documentary evidence introduced by defendant was not conclusive and the trial court properly admitted testimony to explain and contradict the contents thereof: *Clark v. Metropolitan Life Ins. Co.,* 62 Pa. Superior Ct. 192; *Borgon v. John Hancock Mutual Life Ins. Co.,* 99 Pa. Superior Ct. 377; *Wilmer v. Industrial Health, etc. Co.,* 101 Pa. Superior Ct. 366; *Brelish v. Prudential Ins. Co.,* 109 Pa. Superior Ct. 1, 165 A. 516; *Trotter v. Industrial Health, etc. Co.,* 115 Pa. Superior Ct. 487, 175 A. 884.

Quoting from the opinion by Judge KELLER (now President Judge) in *Borgon v. John Hancock Mut. Life Ins. Co.,* supra, at pp. 381, 382: "As to proofs of death, it has been held in this State, time and again, that while they are admissible in evidence against the plaintiff the latter is not estopped at the trial by anything stated therein by physicians or others. Such statements are open to explanation or even to contradiction by the plaintiff: *Holleran v. Life Assurance Co.,* 18 Pa. Superior Ct. 573, 576; *Baldi v. Metropolitan Life Ins.*

*Co.,* 18 Pa. Superior Ct. 599, 612; *Furey v. Met. Life Ins. Co.,* 49 Pa. Superior Ct. 592, 594; *South Side Trust Co. v. Eureka Life Ins. Co.,* 74 Pa. Superior Ct. 566, 571; *Felix v. Fidelity Mut. Life Ins. Co.,* 216 Pa. 95, 99; *Fisher v. Fidelity Mut. Life Assn.,* 188 Pa. 1, 14; *Lebanon Ins. Co. v. Kepler,* 106 Pa. 28, 34. ......", and later in the same opinion, speaking of death certificates, as follows, at p. 384: "But if the Act (June 7, 1915, P. L. 900) is valid in this respect and applies to actions based on private contract, the evidence so to be received is not conclusive but only prima facie, and is open to explanation and contradiction by the opposing party. There is no element of estoppel in the case, for the plaintiff had nothing to do with its preparation or filing. The doctor who made it was not sworn and the plaintiff had no opportunity to cross-examine. If evidence at all, it is evidence only for what it is worth, (Wigmore, Sec. 1646, p. 441), and concludes nobody." To same effect see *Wilmer v. Industrial Health & Accident,* supra, also *Trotter v. Industrial Health, etc. Co.,* supra.

The burden of proving unsound health at the time of issuance of the policy on March 18, 1935, was on defendant company. If tried before a jury it would have been improper for the trial judge to have given binding instructions in favor of defendant. In the instant case, trial by the judge without a jury, the findings of the latter are as binding, if supported by competent evidence, as the verdict of a jury: *Mabrey v. Metropolitan Life Ins. Co.,* 70 Pa. Superior Ct. 321.

It is not necessary to pass on the effect of the Act of July 19, 1935, P. L. 1319, relating to medical examination, and waiver, as the trial judge based his conclusion on the fact that the defendant failed to prove unsoundness of the insured's health at the time the policy was delivered.

The assignments of error are overruled and judgment affirmed.