## METH v. UNITED BENEFIT LIFE INS. CO.

No. 10594.

United States Court of Appeals
Third Circuit.

Argued March 21, 1952.

Decided July 14, 1952.

John F. Thaete, Philadelphia, Pa. (Walter B. Gibbons, Philadelphia, Pa., on the brief), for appellant.

Paul M. Goldstein, Philadelphia, Pa. (I. I. Azimow, Stark & Goldstein, Philadelphia, Pa., on the brief), for respondent.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal by an insurance company arising out of a judgment entered against it in an action instituted by the insured, Joseph Meth, to recover benefits claimed to be due as the result of his permanent and total disability arising under the policies in question. Meth died of his illness shortly before the case came to trial and his widow, executrix of his estate, was substituted as plaintiff. The parties are in federal court by reason of diversity of citizenship. Pennsylvania law is applicable to the merits of the controversy.

The policies involved, three in all, were issued on February 4, 1946. They are accident and health policies which insured Meth against loss of time " * * * caused by sickness contracted during the term of this Policy * * *." The term of each policy began on the thirty-first day thereafter against sickness, namely, on March 7, 1946. Paragraph J of each policy provided

that the disability to be compensable must result " \* \* \* from sickness, the cause of which originates more than thirty days after the date of this policy, \* \* \*."

Appellant presented two defenses during the trial below; (1) Fraud, which is out of the case on appeal and (2) "Prior origin" of the sickness causing the disability. The trial judge left it to the jury to decide the date of origin of the cause of sickness from which disability resulted. After verdict and judgment for plaintiff, defendant moved under Rule 50(b), Fed.Rules Civ. Proc. 28 U.S.C., for judgment in accordance with its motion for a directed verdict. This was denied. 99 F.Supp. 1022.

■ Plaintiff insists that the trial judge was in error in ruling that defendant was not estopped to assert the defense of "prior origin". If this proposition were sustained, it would be dispositive of the matter as the question of fraud, the only other defense raised, decided against defendant below, was not appealed. Plaintiff's contention is based on the fact that the sole reason asserted by the company to Meth in support of its refusal to pay disability benefits under the policies in suit was fraud in the inception. Plaintiff considers the Pennsylvania law to be that where the insurer has refused to pay on one ground and has so informed the insured it cannot when sued set up a defense on another ground. Such construction of the rule is entirely too broad. Denial of liability on one ground does not in all cases operate as a waiver of all other grounds. Slater v. General Casualty Co. of America, 344 Pa. 410, 416, 25 A.2d 697, 699. The court there stated:

> "The rule is correctly stated in Welsh v. London Assurance Corp., 151 Pa. 607, at page 618, 25 A. 142, 143, 31 Am.St.Rep. 786: 'No party is required to name all his reasons at once, or any reason at all; and the assignment of one reason for refusal to pay cannot be a waiver of any other existing reason, unless the other is one which could have been remedied or obviated, and the adversary was so far misled or lulled into security by the silence as to such reason that to enforce

it now would be unfair or unjust. \* \* \*'"

■ The defense of "prior origin" is not one which could have been remedied or obviated by the plaintiff. Meth's disability was either within or without the coverage of the policies. If in fact it was not within the coverage of the policies, adding the defense of "prior origin" does not deprive the insured of any indemnity for which he has paid. Though we have referred to "prior origin" as a defense of the insurance company, actually it was incumbent upon plaintiff to show that Meth's disability was within the coverage of the policies. Mayer v. Prudential Life Insurance Co. of America, 121 Pa.Super. 475, 184 A. 267; Guise v. N. Y. Life Insurance Co., 127 Pa.Super. 127, 191 A. 626. The jury was aware of this from the court's charge.

During the trial plaintiff also urged that the "prior origin" clause of the policies, Paragraph J, would permit recovery if the disability manifested itself during the term of the policies though the medical cause antedated it. This was vigorously disputed by defendant whose contention was that, properly interpreted, the clause excluded such a risk. The district judge found that plaintiff made a sufficient case to go to the jury even under defendant's interpretation of the "prior origin" clause and he stated that it was therefore unnecessary to determine whether defendant's definition of the risk was too narrow.

■ We turn then to the important question on this appeal, whether there was any evidence to justify the jury in finding that Meth's disability resulted from a sickness, the cause of which originated on or after March 7, 1946. We think there was such evidence. The plaintiff introduced without objection a certified copy of Meth's death certificate on which the attending physician certified that the interval from the onset of illness to date of death (October 16, 1950) was two years. This would place the origin of the cause of sickness from which disability resulted at or about October, 1948, well over two years after the effective date of the policies. Defendant does not suggest that the death certificate

was improperly admitted into evidence. The applicable statute, Pennsylvania Act of June 7, 1915, P.L. 900, Section 21, 35 Purdon's Statutes, § 471, provides that a death certificate, properly certified by the Department of Health " * * * shall be prima facie evidence in all courts and places of the facts therein stated: * * *." Defendant rather relies on the further certification by the attending physician in the death certificate that he had attended Meth for less than two months prior to the date of his death. It is argued that the physician, who was not called to testify at the trial, could not have had personal knowledge of the date of origin of Meth's sickness and that his certificate of the duration of illness is without probative value as being a sheer guess[1] or, at best, objectionable hearsay.[2]

We agree with the trial court that it does not necessarily follow from the fact that the attending physician only treated Meth for two months immediately preceding his death that he was unable to certify that Meth's sickness had its origin two years before his death. As was said below: "However strongly one may feel that the physician's statement is in the nature of hearsay, the conclusion that it is hearsay is neither logically inevitable nor supported by evidence." In the first place, attendance by the physician for only the last two months of Meth's life does not ipso facto preclude former personal contact with the patient as a friend or acquaintance in the same neighborhood, etc., well before treating him, as a result of which he may have come to know of the origin of Meth's sickness. Again, if the statement of the date of onset was the physician's conclusion founded upon his own personal examination and treatment of the patient during his last hospitalization, it was evidence that would have been clearly admissible had the doctor himself so testified. We see nothing strange in the thought that a physician, presumably skilled in his profession, can determine the duration of a patient's sickness from such observable data. It may be that the physician reached his conclusion aided by having had the patient's recital of his then present symptoms, and in such a case a physician could testify to his opinion formed in part from such history.[3] Finally,

---

1. In Oliver v. Industrial Health, Accident & Life Insurance Co., 125 Pa.Super. 149, 189 A. 736, the trial judge sitting without a jury admitted a death certificate in evidence, for the purpose of showing the date of death and cause of death but not for the purpose of showing the duration of the disease or illness of the insured. It was excluded for the latter purpose " * * * as a mere guess.' " 125 Pa.Super. at page 152, 189 A. at page 737. *The certificate stated that the duration of the disease was three years, and the physician who executed it certified therein that he had attended the deceased for exactly one month prior to her death.* The trial judge's exclusion of the certificate for the purpose desired by the insurance company was held to have been non-prejudicial, for the lower court had been careful to note that even if the certificate had been admitted in its entirety, its prima facie effect " * * * was overcome by the testimony of the plaintiff's witnesses." There, as here, the physician who executed the certificate was not in court and could not be examined. Speaking obiter the appellate court, significantly we think, said, 125 Pa.Super. at page 153, 189 A. at page 738: "If the

instant case had been tried before a jury, * * * there might be some justification for the position of appellant that it was error to exclude the contents of the certificate as prima facie evidence thereof." The court then proceeded to demonstrate the non-prejudicial effect of the exclusion of the certificate. See also Jones v. Industrial Health, Accident & Life Insurance Co., 125 Pa.Super. 143, 147, 189 A. 734.

2. We are urged by defendant to construe Section 21 of the Pennsylvania statute so as to be constitutional in its enactment. It is said that several Pennsylvania intermediate court cases following Borgon v. John Hancock Mutual Life Insurance Co., 99 Pa.Super. 377, 384, have raised the question of its constitutionality if, without notice of such purpose in its title, it be interpreted to change the rules of evidence to make evidence admissible that would have otherwise been inadmissible hearsay, i. e. if construed to apply to matters not within the personal knowledge of the person making the certificate. We do not reach the asserted constitutional defect.

3. Pennsylvania law, at the very least, as a necessary variant of the hearsay rule,

if the duration of the disease as given by the doctor in the death certificate was based on what he did or saw at the autopsy by itself or in conjunction with the above, again, the doctor could have given such evidence as a witness. That there was an autopsy appears from the death certificate itself and presumably the person who made that notation was the attending physician who signed the certificate. It would have been most reasonable for him to have been present at the autopsy and certainly such situation cannot be here eliminated from consideration.[4]

■ We therefore reject the defendant's argument that the attending physician's certification of the date of onset of Meth's sickness was without probative value. The death certificate was admissible not only to prove the date of Meth's death, and the cause thereof, which defendant readily concedes, but it equally was prima facie evidence of the date of onset of the illness causing his disability. It was conclusive for none of these purposes, Frame v. Prudential Insurance Co. of America, 358 Pa. 103, 107, 56 A.2d 76; Norwood v. Great American Indemnity Co., 3 Cir., 146

F.2d 797, 800, but its weight was for the jury to determine together with the other evidence in the case. Borgon v. John Hancock Mutual Life Insurance Co., supra, 99 Pa.Super. at page 385. No reason appears in the record why the defendant could not have called the doctor to take the stand if it was not satisfied with his statement in the certificate.

■ The defendant, we think properly, has not challenged the above statement by the attending physician as a conclusion or an opinion rather than as a fact within the meaning of Section 21 of the Pennsylvania statute.[5] Cf. Jensen v. Continental Life Insurance Co., 3 Cir., 28 F.2d 545, certiorari denied 279 U.S. 842, 49 S.Ct. 263, 73 L.Ed. 988. His certification of the interval between onset and death is no less a statement of an ultimate medical fact than his certification of the cause of death, which in this case was multiple myeloma. It equally involved the exercise of professional judgment in making a statement which we have shown could well have been the product of personal observation and knowledge.

The judgment of the district court will be affirmed.

---

permits testimony by a treating physician of statements made by his patient to him for the purpose of assisting his treatment and confined to the then present " * * * condition, symptoms, sensations, or feelings of the patient * * *." Eby v. Travelers' Insurance Co., 258 Pa. 525, 536, 102 A. 209, 212. Testimony as to the cause of an injury, not part of the res gestae, and offered under the guise of medical history is properly excluded under Pennsylvania law. Whether history of past symptoms of a present disease given the treating physician for his assistance would be barred under Pennsylvania law is somewhat questionable but of no importance here. Cf. Meaney v. United States, 2 Cir., 112 F.2d 538; 6 Wigmore on Evidence (3rd ed.) Section 1722.

4. We believe that defendant has inadvertently overlooked the possibility recognized in many Pennsylvania cases that exact medical data is often best ascertained from an autopsy, for defendant's brief makes no reference to the autopsy performed in this case. It would, of course, be immaterial that the doctor performing or attending the autopsy never before treated the deceased or did so for only a limited period prior to his death. See, e. g., McGarity v. New York Life Insurance Co., 359 Pa. 308, 59 A.2d 47.

5. The duration of the disease causing death is one of the facts required to be definitely stated by the attending physician under Section 7 of the statute. 35 P.S. § 457. The same section distinguishes between things to be so definitely stated, such as the cause or causes of death and the duration of each, and other items which need only be stated "probably" (whether death from violence was accidental, suicidal or homicidal) or "in his opinion" (where the disease was contracted, in case of deaths in hospitals, institutions, or away from home).