**INLAND MUTUAL INSURANCE COMPANY**

v.

**Bernard K. DAVENPORT, Franklin A. Wilson, Jr., Joan A. Mosley, Lawrence Mosley, Edward Smith, Gertrude Smith, Bernard I. Cook, Maryland Indemnity and Fire Insurance Exchange, an inter-insurance exchange, Unsatisfied Claim and Judgment Fund Board, and Irving K. Edelstein, t/a Checker Cab Company.**

Civ. No. 15326.

United States District Court
D. Maryland.

Nov. 17, 1965.

James J. Doyle, Jr., and Sherbow, Shea & Doyle, Baltimore, Md., for plaintiff.

Charles P. Howard, Jr., Baltimore, Md., for Bernard K. Davenport.

Lee Klavans, Baltimore, Md., for Franklin A. Wilson, Jr., and Irving K. Edelstein, t/a Checker Cab Co.

Thomas V. Friedman, Baltimore, Md., for Joan A. and Lawrence Mosley.

Morris Mazelis, Baltimore, Md., for Edward and Gertrude Smith.

Paul Berman, Baltimore, Md., for Bernard I. Cook.

Matthew Swerdloff, Baltimore, Md., for Maryland Indemnity & Fire Ins. Exchange.

Thomas B. Finan, Atty. Gen. of Maryland, and R. Randolph Victor, Asst. Atty. Gen., Baltimore, Md., for Unsatisfied Claim and Judgment Fund Board.

THOMSEN, Chief Judge.

Plaintiff, Inland Mutual Insurance Company (Inland Mutual) seeks a declaratory judgment that it is not obligated under its automobile policy #107815, issued to Bernard K. Davenport, to defend Davenport in any suit or suits now pending or hereafter brought for personal injuries or property dam-

ages arising out of an accident which occurred on June 12, 1963. Joined with Davenport as defendants in the case are the drivers of a taxicab and of another automobile involved in the accident, the passengers in the taxicab and in the other automobile, the insurer of the taxicab, and the Unsatisfied Claim and Judgment Fund Board of the State of Maryland, which may be liable for claims against Davenport if Inland Mutual is successful in this action.[1] Inland Mutual relies on the following contentions: (1) that the policy which it issued to Davenport was voidable and was properly avoided by it because of a material misrepresentation with respect to Davenport's age in his application for the policy; and (2) that it properly disclaimed liability because of (a) the failure of Davenport to give notice of the accident as required by condition 1 of the policy,[2] and (b) the failure of Davenport to give prompt notice of the suit filed against him by Edward Smith, in which Davenport was served with process before the first Monday in August 1963, and of any claims made against him prior thereto, as required by condition 2 of the policy.[3]

The several defendants deny that the alleged misrepresentation was material to the risk; and they contend that Davenport or his broker gave prompt notice of the accident to Inland Mutual, that it had reasonably prompt notice of the claims which were made, and that Davenport turned the suit papers over to it within a reasonable time. Defendants further contend that Inland Mutual waived or is estopped from asserting the defenses based upon the alleged misrepresentation with respect to age and the

alleged failure of the insured to give prompt notice of the accident, claims and suit.

*Facts*

*A*

The Court finds as a fact that Davenport was born on September 27, 1945, and was, therefore, 17 years and 7 or 8 months of age when he applied for the policy involved in this case. Several months prior thereto he had purchased an automobile and had obtained a learner's permit, since he did not have an operator's license at that time. In his application for a learner's permit, he falsely gave his age as 22 and the date of his birth as September 27, 1940. The same date of birth, September 27, 1940, appeared on his Selective Service card.

When Davenport decided to seek insurance for his automobile, he got in touch with Roderic Givner, Inc., his insurance broker, who acted as Davenport's agent at all material times herein. Givner had or obtained an automobile insurance application form from Shope Insurance Agency, an agent of Inland Mutual. At that time Inland Mutual was not writing any selected risks in Maryland but was writing substandard risks of various sorts. The term "substandard" is a risk classification which, as used by Inland Mutual, may mean no more than that the prospective insured has been turned down by some other company, or it may mean that the prospective insured is otherwise a poor risk. Inland Mutual also wrote financial responsibility policies which were required by a Maryland statute when the assured

---

1. The Board also may be liable for claims against the driver of the other automobile.

2. Condition 1 reads as follows:
 "1. *Notice of Accident—Coverages A, B and C.* When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably ob-

tainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

3. Condition 2 reads as follows:
 "2. *Notice of Claim or Suit—Coverages A and B.* If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

had been in previous accidents or was a minor.

Davenport furnished his broker Givner almost all the information called for by the application.[4] Particularly, Davenport gave his date of birth as September 27, 1940, by showing his Selective Service card to Givner or by telling him the date or both, and that date was inserted in the application which was signed by Davenport. The application did not contain the specific question whether the applicant had an operator's license, although it did contain questions as to whether the applicant's driver's license had ever been revoked or suspended and whether he had ever been convicted of various offenses within the past three years. Davenport's application was for public liability and property damage insurance with limits of $10,-000/$20,000 and $5,000 respectively. The application was sent promptly by Givner to Shope, and within a few days Shope prepared and issued an Inland Mutual automobile policy, insuring Davenport for the limits and coverages specified for a period of six months at a total premium of $90 for public liability and $60 for property damage. Those were the appropriate premiums for the classification in which Davenport was placed, 3SS, a single male under 25 years of age.[5] Davenport had paid a $50 deposit; a second instalment fell due on June 14, 1963.

▮ In accordance with customary practice, Shope forwarded the original application to the home office of Inland Mutual, together with the "daily report" dealing with the policy. The application was received at the home office on or about June 3 and was reviewed by the vice-president in charge of underwriting. He was an experienced insurance man, now the Deputy Insurance Commissioner of the State of West Virginia; the Court accepts his testimony as trustworthy. He testified that Inland Mutual would not have written the policy if it had known that the applicant, owner of the automobile, was under 18 years of age. He further testified that the company had had a policy not to insure applicants under 21 years of age, but that the policy had been modified shortly before May 1963, and the minimum age reduced to 18 years. He stated that, based upon his experience, drivers under the age of 18 operating their own automobiles presented a greater risk than older drivers. Inland Mutual would write policies for adult automobile owners even though they indicated on the application that minor children under 18 might from time to time operate the automobile. Inland Mutual also wrote, for various premiums, the most undesirable types of risks. The Court finds as a fact that Shope would not have written the policy if it had known that Davenport was under 18, and also finds that the vice-president of Inland Mutual in charge of underwriting would have declared the policy void and returned the premium if he had known of the misrepresentation at the time he reviewed the application on June 3, 1963. Since the policy contained a ten day cancellation clause, the vice-president could not have effectively canceled the policy before the accident on June 12, 1963, but he could have avoided the policy before that date for a material misrepre-

---

4. The following questions in the application were not filled out:

"7. Is Automobile used for business, such as salesman? Yes _____ No _____.

"8. Has any driver shown above been involved in any accident during the past three years? Yes_____ No _____. If yes explain fully:

"9. Has the applicant had any automobile insurance cancelled or declined during the past three years? Yes _____ No _____ If yes explain fully: When? _____ Why? _____ Name of Company that cancelled or declined _____

"10. Convictions Past 3 years: If none answer none _____."

5. The National Bureau of Casualty Underwriters uses "Class 2C" to mean a single male under 25 years of age. Inland Mutual used the symbol "3SS" to designate that class.

sentation. The Court finds as a fact that Davenport's misrepresentation with respect to his age was material.

### B

The accident occurred on June 12, 1963. Davenport himself was injured and had stitches in his mouth which made it difficult for him to talk. Inland Mutual has not offered in evidence the claim records of the Shope Agency, the claim records of Schooley & Co., the Baltimore adjusters for Inland Mutual, or the records of the home office of the insurer, and defendants have not offered in evidence the records of Schooley & Co., although the Court directed that the records be made available to them. The Court can only assume that the records of Shope, Schooley and the home office are either so vague that they do not show dates or would not help Inland Mutual, and that the Schooley records would not help defendants. By inference from the evidence, and by assuming that Givner did what he should have done, the Court finds that Davenport reported the accident to Givner within a day or two after the accident, that Givner made a reasonably prompt report thereof to Shope or to Schooley, and that Schooley began an investigation not later than July 3, probably earlier. At that time Schooley learned of some, at least, of the claims which were being made against Davenport as a result of the accident. Schooley also obtained at that time the original police report, which showed Davenport's date of birth as September 27, 1940. That erroneous date had been further confirmed by a credit report which Inland Mutual had secured. The representatives of Schooley were having some difficulty getting in touch with Davenport because he stayed at his mother's home for a while after the accident and was not at his home.

Meanwhile, Davenport had not paid the second instalment of his premium and on June 21, 1963, Inland Mutual sent a notice of cancellation for non-payment of premium, effective July 2, 1963.

Some time before the first Monday in August 1963, Davenport was served with a summons and declaration in the first suit filed against him arising out of the accident of June 12 (the Smith suit). He did not deliver those suit papers to Inland Mutual until August 20, at which time he had an interview with a representative of Schooley, with whom he had spoken on the telephone a few days before. The plea was due on August 20, but by agreement with counsel for the plaintiff in the Smith suit the plea was filed on August 22, after a non-waiver agreement had been entered into between Davenport and Inland Mutual. The non-waiver agreement recites the contention of Inland Mutual that Davenport was not entitled to the benefits of the policy by reason of his failure to give notice, as required by the policy, and his failure to cooperate with Inland Mutual in the investigation of the claims arising from the accident. The operative clause of the agreement reads as follows:

"NOW, THEREFORE, it is understood and agreed between the said Bernard K. Davenport and INLAND that INLAND may undertake to investigate the aforesaid accident, to negotiate the settlement of any claims arising therefrom, and to defend any suits against Bernard K. Davenport arising out of said accident, without prejudice to the rights of INLAND, and that no action heretofore or hereafter taken by INLAND shall be construed as a waiver of the right of INLAND, if in fact it has such right, to deny liability for the payment of any settlement, verdict or judgment against Bernard K. Davenport.

"INLAND agrees that by the execution of this Agreement, Bernard K. Davenport does not waive any rights, if any he may have, under the aforesaid policy."

No reference was made in the agreement to the misrepresentation with respect to age.

 The Court finds that there was no failure to give due notice of the accident and that there was no unreasonable delay in giving notice of claims and suits.[6] The Court finds that Inland Mutual learned of the misrepresentation with respect to age when Schooley's representative first saw the report of the Accident Investigation Division of the Police Department. From the weight of the credible evidence, the Court further finds that Inland Mutual's representative did not see that report until after August 22, 1963, the date on which the non-waiver agreement was executed. Inland Mutual did not disclaim liability or seek to avoid the policy by reason of the misrepresentation with respect to age until February, 1964, the month in which the present action was filed.

On the basis of the facts found in A and B, above, the only question for decision is whether Inland Mutual waived or is estopped from asserting its defense based upon the material misrepresentation made by Davenport with respect to his age.

### Discussion

In the recent case of Watson v. United States F. & G. Co., 231 Md. 266, 189 A.2d 625 (1963), the Court of Appeals said:

"This Court has had occasion to deal with questions of waiver and estoppel many times. In Gould v. Transamerican Associates, 224 Md. 285, 167 A.2d 905, we pointed out in considerable detail the close relationship between waiver and estoppel, and, at times, the difficulty in distinguishing between an implied waiver and an estoppel. We said that many courts now state that waiver not only includes the intentional relinquishment of a known right, but such conduct as warrants

an inference of the relinquishment of such a right, and may result from an express agreement or be inferred from circumstances; and the distinction between waiver and estoppel most frequently adverted to is that waiver rests upon the intention of a party, while estoppel rests upon a detrimental change of position induced by the acts or conduct of the party estopped." 231 Md. at 274, 189 A.2d at 628, 629.

### Waiver

A number of Maryland cases have held that it is a question of fact for the jury (or for the court without a jury) whether an insurer waives its right to disclaim liability by retaining exclusive control of the defense of a damage suit for various periods after the insurer learns of the breach of a condition by the insured, even though the insurer has written a letter attempting to reserve its rights. Columbia Casualty Co. v. Ingram, 154 Md. 360, 140 A. 601 (1928); Hankins v. Pub. Ser. Mutual Ins. Co., 192 Md. 68, 63 A.2d 606 (1949); Watson v. U. S. F. & G. Co., supra; Manufacturers Casualty Ins. Co. v. Roach, D.Md., 25 F.Supp. 852 (1939).

In none of those cases, however, had there been a non-waiver agreement. The distinction between a unilateral "reservation-of-rights" letter and bilateral non-waiver agreement has been recognized by the Maryland courts; non-waiver agreements have been approved and are used extensively. Hardware Mutual Casualty Co. v. Mitnick, 180 Md. 604, 26 A.2d 393 (1942); American Auto Ins. Co. v. Master Building Supply & Lumber Co., D.Md., 179 F.Supp. 699 (1959).

The agreement in the instant case, quoted in B, above, provides that "no action heretofore or hereafter taken by

6. The Court further finds that there was no prejudice to the insurance company from the failure to give notice of the claims and suits more promptly. However, under the Maryland law in effect at the time, it was not necessary for an insurer to prove that it has been prejudiced by failure to give prompt notice. Watson v. U. S. F. & G. Co., 231 Md. 266, 189 A.2d 625 (1963), and cases cited therein. But see the Act of 1964, ch. 185, Anno. Code of Maryland, Art. 48A, § 482.

INLAND shall be construed as a waiver of the right of INLAND, if in fact it has such right, to deny liability for the payment of any settlement, verdict or judgment against Bernard K. Davenport."

Defendants claim, however, that the broad language of the agreement is modified by the recitals which make specific reference to failure to give notice as required by the policy and failure to co-operate in the investigation of the claims, and do not make reference to the misrepresentation with respect to age. The Court has found that Inland Mutual did not know of that misrepresentation at the time the non-waiver agreement was prepared and executed. Nevertheless, defendants contend that Inland Mutual waived its right to disclaim liability on the ground of misrepresentation because it did not file this declaratory judgment suit or otherwise disclaim liability until about six months after it learned of the misrepresentation, shortly after the non-waiver agreement was executed. This contention of defendants is not supported either by the law or the facts.

█ It is a general principle of Maryland law that "the operative part" of a contract determines "what the parties actually did" by entering into the contract. Pulaski v. Riland, 199 Md. 426, 431, 26 A.2d 907 (1952); 5 Maryland Law Encyclopedia, Contracts, sec. 131, p. 437. It is not necessary to decide whether, under other circumstances, "the operative part" of a contract may ever be limited by the recitals. It is sufficient to say that in the instant case the recitals do not prevent the insurer from relying upon the operative part of the agreement in continuing the defense of Davenport and from instituting this declaratory judgment suit at the time it did. This conclusion is supported by decisions dealing with more or less analogous situations. See Atlas Assurance Co. v. Standard Brick & Tile Corp., 7 Cir., 264 F.2d 440 (1959); Orenstein v. Star Ins. Co., 4 Cir., 10 F.2d 754 (1926); Meth v. United Benefit Life Ins. Co., 3 Cir., 198 F.2d 446 (1952); Liverpool & London & Globe Ins. Co. v. Nebraska Storage Warehouses, 8 Cir., 96 F.2d 30 (1938); and Great American Accident Insurance Co. v. Roggen, Tex.Civ.App., 144 S.W.2d 1115 (1940).

█ It is true that the intentional relinquishment of a known right, which is the basis of waiver, may be shown by conduct which warrants an inference of the relinquishment of such right. But the Court finds from all the evidence and circumstances of this case that Inland Mutual did not intend to waive and did not waive its right to disclaim liability on the ground of Davenport's material misrepresentation with respect to his age. See Watson v. U. S. F. & G. Co., supra.

### Estoppel

█ In the instant case, as in the Watson case, the question of estoppel gives little difficulty. There is not a shred of evidence that the insured was in any way prejudiced, in any way misled, or in any way changed his position as a result of the time span between the discovery of the misrepresentation by the insurer and the institution of the present suit. See 231 Md. at 277, 278, 189 A.2d at 631.

### Conclusion

█ Since the policy in question was obtained by a material misrepresentation, it was voidable, and Inland Mutual is entitled to a declaratory judgment that it is not obligated under the policy to defend Davenport in any suit or suits now pending or hereafter brought for personal injuries or property damages arising out of the accident of June 12, 1963. Counsel will prepare an appropriate judgment order.