Richard M. WHITE, Plaintiff–Appellant,

v.

INVESTORS MANAGEMENT CORPORATION; James H. Maynard; Wayman O. Leftwich, Jr.; Earnest E. Renaud; William F. Carl; Louis W. Sewell, Jr.; John M. McCormick; Harold S. Geneen; Ira J. Hechler; Glenn E. Anderson, Sr.; Terry Sanford, as Directors of Investors Management Corporation, Defendants–Appellees.

No. 88–2540.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1988.

Decided Nov. 6, 1989.

---

Palmer Freeman, Jr. (Sinkler & Boyd, Columbia, S.C., Allen R. Tew, Tew & Hudson, Clayton, N.C., on brief), for plaintiff-appellant.

Leslie A. Nicholson, Jr. (Thomas J. Catliota, Shaw, Potts & Trowbridge, Washington, D.C., on brief), for defendants-appellees.

Before RUSSELL and HALL, Circuit Judges, and KNAPP, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.

DONALD RUSSELL, Circuit Judge:

The plaintiff Richard M. White (hereafter "White") asserts in his complaint that the defendant Investors Management Corporation (hereafter "IMC") and its directors improperly and fraudulently sought, in redeeming the plaintiff's stock in IMC, to deprive him of the proper amount due under the redemption. The defendants contend this proposed payment in redemption was as authorized under its Articles of Incorporation.[1] The Articles of Incorporation of IMC provide two methods of redeeming the Special Common Stock in such corporation owned by the plaintiff. One of such methods contemplates a "complete" redemption and the other a "partial" redemption. The importance of the distinction lies in the formulae separately provided for calculating the amount to be paid a Special Stockholder under the methods of redemption. The formula for payment in the case of a "complete" redemption contemplates a price in reduction more than two times that authorized in the case of a "partial" redemption. The real controversy is that the plaintiff contends he is entitled to the amount payable on the ground that the redemption of his stock was a part of a "complete" stock redemption, whereas the defendants contend the redemption was "partial." The district judge concluded on the defendants' motion for summary judgment that it was clear from the Articles of Incorporation that the redemption was "partial" and that the plaintiff's right of payment for his stock was as provided for such "partial" redemption.

The plaintiff moved under Rule 60(b), Fed.R.Civ.P., to set aside the judgment. In support he relied on the express language of the resolution of the board of directors of IMC under which the redemption was effected. The district judge, however, dismissed the motion on two grounds: (1) that the minutes on which the plaintiff primarily based his motion had been available to plaintiff since August 18, 1987 (the order granting summary judgment was dated January 28, 1988) and was not newly-discovered evidence; and (2) that "the relevant text of the April 3, 1986 resolution by the IMC board of directors [authorizing the redemption] establishes that the directors unquestionably voted to redeem the stock [as] a partial redemption." The plaintiff has appealed the denial of such motion and the judgment entered thereon.

We reverse.

I.

The plaintiff was initially the owner of 500 shares of stock in the corporation Mid–South Holding Company (hereafter "Mid–South"). Mid–South and the defendant IMC were related corporations with similar management and some overlap in ownership. Both had a common interest in the subsidiary Golden Corral Corporation (hereafter "GCC"), which operated a profitable and expanding chain of family steakhouse

---

1. The directors of IMC are defendants along with the corporation.

restaurants. In late 1981 the management of IMC and Mid–South developed a plan for the merger of Mid–South into IMC. The purpose of such merger was to protect the management of the three corporations (IMC, Mid–South and GCC) from possible stockholders' objections to their "innovative compensation programs," and to eliminate on a staggered basis all public stockholders (such as the plaintiff) who might be critical of such "programs." The proponents of the merger (consisting primarily of the management in both instances) sought to accomplish this result through a redemption program which would "enable [the public stockholders] to realize a fair value for their shares" but, at the same time, to provide for the elimination of any public ownership.

Under the proposed merger, the old Mid–South stock would be exchanged for a new class of IMC stock. This new stock was to be designated as "Special Common" stock and was to be subject to redemption by the corporation either by way of a "complete" redemption as provided in subsection 4(a) of the Articles of Incorporation or by way of a "partial" redemption, as provided under 4(b) of such Articles. The two methods of redemption, however, could result in very different payment for the stock redeemed with an advantage to the redeemed stockholder in a "complete" redemption over a "partial" redemption. In addition to this difference in method of redemption, the corporate directors could also affect the price to be paid for the redeemed stock by fixing the time for the redemption (whether in a profitable or depressed quarter). In their proxy statement recommending the merger to the stockholders of the two entities the IMC, under the heading SAFE-GUARDS FOR HOLDERS OF SPECIAL COMMON, assured the stockholders of the merged corporation that "Shares of Special Common will be redeemed by using whatever method yields the highest per share price."

The proposed merger was approved in early 1982, and the plaintiff received two shares of Special Common Stock of IMC at that time in exchange for his Mid–South stock.

Unknown to the plaintiff, the management of IMC embarked in late 1985 on a plan to eliminate the entire issue of Special Common Stock. As a step in this plan, the defendants made an offering solely to all "employees, former employees and other insiders and 'quasi-insiders'" of a new Class C Nonvoting Common Stock in exchange for their Special Common Stock. As a result of this and the purchases of certain Special Common Stock, IMC claimed to have reduced the number of outstanding Special Common Stock to 96 shares as of April 4, 1986. By letter dated April 5, 1988, IMC advised the plaintiff that it was redeeming his stock along with all other outstanding Special Common Stock under Article 4(b) of the Articles of Incorporation.

The material attached to IMC's letter of April 5 purported to explain the proposed redemption by identifying the original number of "Special Common" stock as 540 shares, thirty percent (30%) of which was 162 shares. It declared that there were only 96 shares of such stock outstanding, and that, under 4(b), it had the right to redeem the plaintiff's stock at a partial redemption price of $31,877 per share, citing Article 4(b) of the Articles of Incorporation. The notice given plaintiff did not refer to or quote any specific corporate resolution authorizing such redemption.

The plaintiff responded to this notice by demanding payment, claiming the redemption had been a "complete" redemption. Under his contention, the plaintiff would have been entitled to $87,068.47 per share or a total of $174,136.93. When denied such relief by the corporation, the plaintiff filed this suit in the district court of South Carolina.

## II.

In his complaint, the plaintiff asserted that the redemption of his stock was a part of a "complete" redemption and that he was entitled to payment under the "complete" redemption formula. He also included counts charging violations of the Securities Acts of 1933 and 1934, breach of fiduci-

ary duty, and breach of contract accompanied by a fraudulent act under South Carolina law. The defendants responded with a denial of the charges made by the plaintiff. The parties then engaged in discovery. The defendants deposed the plaintiff and the latter's broker. They also requested certain documents of the plaintiff, all of which were promptly delivered to defendants' counsel. The discovery requests of the plaintiff, on the other hand, were denied in some instances and in others responded to only with abridged versions of the requested documents.

Among the matters disclosed pursuant to a demand of the plaintiff was an abridged copy of the minutes authorizing the redemption of the Special Common Stock, including that of the plaintiff. The abridged copy showed a large part of the minutes blackened out. The parts of the minutes which were blackened out were said by IMC to be "irrelevant" to the issues in the case. This disclosure of the abridged minutes was on August 18, 1985. The plaintiff was not satisfied with the production of an abridged copy of the minutes authorizing the redemption, with large parts of the resolution blackened out, and was unwilling to accept IMC's representation that the blackened out parts of the minutes were irrelevant. He accordingly moved to compel further discovery. The defendants countered with motions to stay discovery and for summary judgment. While these motions were pending, the district court of South Carolina granted defendants' motion to transfer the venue of the case to the Eastern District of North Carolina. That transfer also carried over to the transferee court the motion to compel discovery as well as a motion of the defendants to stay discovery and for summary judgment.

After transfer of the case to the Eastern District of North Carolina, the pending motions of the plaintiff to compel production and of the defendants to stay discovery were referred by the district court to the magistrate for disposition. The magistrate held a hearing on these motions on August 19, 1987 and entered his order on November 30, 1987. One of the matters particularly discussed at such hearing was plaintiff's demand that he be given not an abridged but the full copy of the resolution of the board of directors authorizing the redemption. In his order, the magistrate accepted the argument that the plaintiff was entitled to the full minutes and not an abridged copy of the minutes which authorized the redemption. He accordingly ordered IMC to furnish the plaintiff "(1) the minutes of the board of directors; (2) the stockholders list of IMC from 1982 until the time plaintiff's stock was redeemed." He denied plaintiff's request to depose Karl and Maynard, the two principal officers of IMC and "[a]ll other discovery [than that specially ordered which included the full resolution] is stayed pending hearing on the motion for summary judgment."

There was some delay in the distribution of the magistrate's order of November 30. In a letter written by plaintiff's counsel to IMC's counsel on December 10, the former stated he had received a copy of the magistrate's order only on December 1, 1987 and that he had telephoned defendants' counsel the next day seeking to find out "when the additional information [required under the magistrate's order] would be provided to me." Counsel for the IMC replied that delivery of the documents must await the entry of a protective order. Such protective order was not signed by the magistrate until January 20, 1988. In this state of the proceedings, the district judge, without notice to any party, and without a hearing and without any recognition that the ongoing discovery order had not been complied with by IMC, filed his order granting summary judgment in favor of IMC on February 1, 1988. The basis of his decision was that the redemption had been authorized under subsection (b) of Article 4 of the Articles of Incorporation and was a partial redemption, entitled to payment as such. He made no reference to the proceedings before the magistrate; in fact, the implication of his order is that he was not acquainted at the time with the fact that the order of discovery entered by the magistrate had been entered and had not been complied with by the defendant IMC. On

February 8, 1988—one week after the entry of the district judge's order of summary judgment—the defendant IMC provided plaintiff for the first time with the minutes of the meeting of IMC's board of directors at which the full resolution authorizing the redemption of plaintiff's stock was adopted. The plaintiff moved on February 22, 1988 (within 30 days of the entry of the summary judgment) under Rule 60(b), Fed. R.Civ.P., to set aside the summary judgment, granted as it had been while the defendants had not complied with an order for production entered by the magistrate. The district judge dismissed the motion.

The district court based its dismissal on two grounds. First, it found that the defendant IMC had given the plaintiff, pursuant to the latter's discovery demand, an abridged copy of the resolution of the IMC board of directors authorizing the redemption on August 19, 1987, and that, under such circumstances, the ground for the plaintiff's motion did not qualify as "newly discovered nor misrepresented" material under the Rule.

The district court gave a second reason for denying plaintiff's 60(b) motion. It declared that it is "this court's perception that the relevant text of the April 3, 1986 resolution establishes that the directors unquestionably voted to redeem the stock at the partial redemption price." Its authority for this conclusion is what it characterizes as the "primary recital of the April 3rd resolution," which was ironically the part of the resolution that IMC had refused to disclose in its production of the abridged copy of the resolution on August 17, 1986. It made no reference to—in fact, it seems the district judge may not have known of the status of the discovery proceedings—the fact that at the time there was an outstanding order of discovery directed to IMC, which had not been complied with.

The plaintiff has appealed that order.

### III.

Under Rule 60(b), relief from a final judgment may be had not merely for mistake, inadvertence, fraud, or misrepresentation but also for "any other reason justifying relief from the operation of the judgment." Such rule, and particularly the provisions of subsection (b)(6), "gives the courts ample power to vacate judgments wherever that action is appropriate to accomplish justice." 11 Wright & Miller, Federal Practice and Procedure § 2864, pp. 211–12 (1973). Whether a case qualifies under the rule for relief is one for discretion of the district judge, *United States v. Williams,* 674 F.2d 310 (4th Cir.1982), but the decision is reviewable as a final judgment under an abuse of discretion standard. *Godwin v. Federal Sav. & Loan Ins. Corp.,* 806 F.2d 1290 (5th Cir.1987). We are of the opinion there was an abuse of discretion in the denial of the 60(b) motion for the reasons hereafter given.

### IV.

The district court entered its order of judgment without notice and without a hearing, even though there was an outstanding order compelling the defendant IMC to produce a critical document in the determination of the case. The critical document was the resolution of IMC's board of directors authorizing the redemption of plaintiff's shares. The original opinion of the district court granting summary judgment apparently proceeded on the assumption that the methods of stock redemption set forth in the Articles of Incorporation were self-executing. That assumption is inaccurate. The Articles of Incorporation merely gave the corporate directors the power to exercise such methods of redemption as were there provided, whether under 4(a) or 4(b). It was accordingly the resolution of the IMC directors which was determinative of whether the redemption was a "complete" redemption under Article 4(a) or a "partial" redemption under Article 4(b). *See* 18A, Am.Jur.2d, § 545, p. 452.

When he entered his order for summary judgment on February 1, 1988, the district judge had before him no resolution of IMC's board of directors authorizing a redemption nor any allegations setting forth in summary form such resolution. An abridged copy of the resolution had been produced, but the parties had not at the

time incorporated such abridged copy into the record. The plaintiff had not done so because he felt that the actual, not the abridged, resolution should be produced for the record. And the magistrate had agreed with the plaintiff and had ordered IMC to produce such actual resolution. The defendant did not except to that order. It did engage in some dalliance in complying with the magistrate's order to produce. It took the position that in producing the full resolution, it should be granted a protective order. It refused to comply until a protective order against disclosure had been entered, though we are at a loss to find anything in the resolution that would justify this protective order. The magistrate approved and signed the protective order as demanded by IMC on January 20, 1988. IMC did not promptly produce the resolution even after the protective order had been entered; it delayed until February 8 to produce the resolution. However, in the meantime, on February 1—one week before IMC actually produced the full resolution of the board of directors—the district judge entered the order for summary judgment.

Clearly, the district judge did not know at the time he entered this order that discovery in the proceedings was incomplete and that the defendant had not complied with an outstanding order for production issued by the magistrate. Nor did he have before him the actual corporate resolution, which would have shown that the redemption was being made not under Article 4(b) as his order for summary judgment assumed, but under Article 4(a), the "complete" redemption provision of the Articles of Incorporation. It may be noted as an aside that the actual resolution demonstrated the inaccuracy of the representation in IMC's letter of April 4 advising the plaintiff of the redemption of his stock.[2] That representation was made by the secretary of IMC who had also certified to the minutes of IMC's board of directors in which the resolution of the Special Common Stock calling for the redemption of the stock showed unmistakably that the redemption was being made under 4(a).

Nor was there any doubt on the part of IMC as to what a redemption under 4(a) would mean. Thus, in its brief submitted in support of its motion for summary judgment (the judgment the district court granted), IMC said:

> The effect of Article Fourth (5)[3](a) is that it gave IMC complete flexibility to redeem all of the Special Common Stock at any time after March 31, 1983, but *at a higher price than the price provided under the more restrictive partial redemption provisions.*

(Emphasis added).[4]

The order for summary judgment, entered on February 1, was entered while discovery, as ordered, was incomplete. The district court, however, would dismiss all this because IMC had given the plaintiff an abridged version of the April 3 resolution on August 18. The court overlooks the fact that the magistrate concluded this was not a sufficient production and, as we have pointed out, granted the plaintiff's motion to produce the full resolution. When the court overlooks the dispositive issue in a case and proceeds to decide a case summarily before discovery is concluded and before an order of discovery has been complied with, there has been a mistake and inadvertence and one that works an injustice. Rule 60(b)—especially as amended in 1948 by the addition of (b)(6)— clearly covers the plaintiff's motion to vacate the summary judgment entered here. This mistake is all the more prejudicial,

---

**2.** The language of the letter was: "Investors Management Corporation ('IMC') hereby exercises its right, pursuant to Paragraph *4(b)* of Article Fourth of its Articles of Incorporation, to redeem the Shares of IMC Special Common Stock which you hold." (Emphasis added.)

**3.** There is some confusion in the record in identifying the Article of Incorporation fixing the methods of permissible redemptions. The plaintiff refers to the paragraph as number 4. IMC has referred to the paragraph as 5 in its brief seeking summary judgment. The district judge adopted this numbering in his orders. However, the resolution of IMC's board of directors providing for the redemption refers to paragraph 4, and we have adopted that numbering. The difference in numbering, however, is unimportant since the language of the paragraph is the same, whether designated as 4 or 5.

**4.** *See* Appendix, p. 52.

since, as we later point out, the resolution under which this redemption was authorized shows clearly that the redemption was under 4(a), which, according to the defendant's assertion, makes the redemption at a higher price.

The district judge gave a second reason for his denial of the plaintiff's 60(b) motion. He accepts the plaintiff's position that the question whether the redemption was a "complete" or "partial" one is to be determined by the corporate resolution under which the redemption was made. That resolution answers clearly and absolutely the question whether the redemption was "complete" (4(a)) or "partial" (4(b)). The redemption was expressly declared to be made under 4(a). The resolving language is as follows:

FURTHER RESOLVED, That the Company shall exercise its right to redeem shares of Special Common Stock of the Company pursuant to Paragraph 4(a) of Article Fourth of the Articles of Incorporation of the Company, redeeming all shares of Special Common Stock of the Company currently outstanding at the redemption price determined by the provisions of Article Fourth.

The effect of such 4(a) redemption was stated by IMC in its brief, quoted *supra.* It gave the stockholder "a higher price than the price provided under the more restrictive partial redemption provisions."

The district judge would disregard this clear language because of what he describes as the "court's perception that the relevant text of the April 3, 1986, resolution establishes that the directors unquestionably voted to redeem the stock at the partial redemption price." It relies for this conclusion on a recital in the corporate resolution, a recital incidentally which was only in the complete corporate resolution which was not produced by IMC until February 8, a week after the district judge had granted summary judgment. It is hornbook law, however, that recitals or preambles in statutes, ordinances, or corporate resolutions are to be looked at at best only when the language of the enacting language is unclear or ambiguous.

The "preamble no doubt contributes to a general understanding of a statute, but it is not an operative part of the statute and it does not enlarge or confer powers on administrative agencies or officers. Where the enacting or operative parts of a statute are unambiguous, the meaning of the statute cannot be controlled by language in the preamble. The operative provisions of statutes are those which prescribe rights and duties and otherwise declare the legislative will." *Jurgensen v. Fairfax County, Va.,* 745 F.2d 868, 885 (4th Cir.1984) (quoting *Association of Am. Railroads v. Costle,* 562 F.2d 1310, 1316 (D.C.Cir.1977)). *See also Inland Mutual Ins. Co. v. Davenport,* 247 F.Supp. 387 (D.Md.1965).

There is not the slightest ambiguity or lack of clarity in the resolving language of the resolution in this case. That resolution declares that the redemption was under (4)(a), the "complete" redemption provision of IMC's Articles of Incorporation. That resolution was drafted by IMC, obviously by their legal counsel. If the directors had intended a "partial" redemption, they would have acted under 4(b). They didn't; they expressly based their redemption on the "complete" redemption provision. In so doing, the directors did what they had represented to the stockholders in their proxy statement in connection with the merger that they would do, *i.e.,* in making redemptions, the "Shares of Special Common will be redeemed by using whatever method yields the highest per share price" to the stockholder. The district judge committed a clear error of law in failing to accept the unambiguous language of the resolution of the corporation in redeeming the stock and in deciding the case when the record demonstrated that discovery had not been completed.

We accordingly reverse the grant of summary judgment and remand the cause to the district court for further proceedings not inconsistent herewith.

REVERSED AND REMANDED.